### 69174. HORACE MANN LIFE INSURANCE COMPANY v. LUNSFORD et al.

(324 SE2d 808)

DEEN, Presiding Judge.

On July 1, 1981, Horace Mann Insurance Company issued a $100,000 one-year renewable and convertible term life insurance policy to Robert Lunsford. For the initial policy period monthly premium payments were made directly to the company through payroll deductions by Lunsford's employer, the Fannin County Board of Education. When Lunsford's employment ceased his method of payment was changed to a "check-o-matic" plan, whereby the payments due on the first of the month were automatically deducted from his checking account in the middle of the month upon presentation of drafts submitted by the insurance company to his bank. A payment of $129.30 was made on November 15, 1981, under the "check-o-matic" arrangement for the September, October, and November premiums. (Apparently, the September premium had been paid by payroll deduction and this amount refunded at some unspecified time when the "check-o-matic" method of payment went into effect.) It was understood that subsequent drafts would be presented to the bank in the middle of the month in the amount of $43.10 for the premium due on or before the first of the month.

The December draft was dishonored for "insufficient funds," and the January draft was returned to the insurance company stamped "account closed." On January 14, 1982, Horace Mann notified Lunsford by letter of the dishonor of the December draft and stated that it would present another draft on February 15 to cover the December premium. The company sent Lunsford a second letter on February 11, 1982, informing him of the return of the January draft and advising him that since it could no longer present drafts for payment of the premiums, the policy was being placed on direct quarterly billing, and that he needed to remit $43.10 to place his payments on schedule. He was also instructed as to the procedure he needed to follow if

he was in the process of changing banks and wished to resume "check-o-matic" payments. The letter went on to state: "We are certain you will want to continue this valuable insurance protection . . . if we do not hear from you within three weeks, the policy *will* lapse." (Emphasis supplied.) Lunsford was killed in an automobile accident on February 22, 1982.

Several weeks after Lunsford's death, his widow submitted to Horace Mann a check dated March 24 in the amount of $131.82, as a quarterly premium payment on the policy. This check was followed by a second check for the same amount on April 7. On April 12, Horace Mann acknowledged receipt of the first check but refunded the remittance, stating that the premium had not been received within the three-week period as provided in the letter of February 11, and that the policy had lapsed as of December 1, 1981. Some time in early April Mrs. Lunsford notified the company of her husband's death, and on April 14 the company sent a letter extending sympathy to her on the loss of her husband and enclosing a claim form. Eight days later Mrs. Lunsford made another premium payment of $43.10. On May 19 the company sent a receipt addressed to Robert Lunsford for $174.92 (the second check for $131.82 and the check for $43.10) and stated that the premium was paid until April 1982. This information was also placed in the company's computer and indicated the premium as "pd. to 4/01/82." On June 7 Horace Mann sent a letter addressed to Robert Lunsford stating that the policy had lapsed as of April 1, but offering to reinstate it if he signed the medical authorization, completed the reinstatement authorization, and paid the $131.82 premium which would pay the policy to July 1, 1982. On June 16 the company sent a letter and check in the amount of $174.92 to Mrs. Lunsford, stating it was refunding her remittance of April 23 as Robert Lunsford had died in February and the payment could not be accepted. Another letter, dated June 24, similar to the one of June 7 and addressed to Robert Lunsford, stated that the policy had lapsed on December 1, set forth the reinstatement requirements, and stated that payment of a premium of $131.82 would pay the premium until April 1.

Mrs. Lunsford then obtained counsel and submitted a claim form and supporting documents on June 23, 1982. A written statutory demand was made on August 6, and the premium refunds were tendered back to the company.

Appellees filed a motion for partial summary judgment as to coverage, and appellant responded with a cross-motion. Horace Mann appeals from the denial of its motion and the grant of partial summary judgment in favor of Mrs. Lunsford and Robert Lunsford's three children, the beneficiaries under the policy. *Held*:

The policy provides: "The policy date is the date from which pre-

mium due dates, policy years and policy anniversaries are determined. The first premium is due on the policy date. To keep this policy in force, you must pay in advance the remaining premiums which are due throughout the lifetime of the insured. You may pay the premium annually, semiannually, quarterly, monthly or under any other mode of payment. You will pay the applicable premium rate, based on the date of issue, for the method of payment requested. The method of payment is subject to our approval." Another section provides that "[o]nly the President, a Vice President or the Secretary of our Company has authority to bind us, to extend the time in which you can pay your premiums or agree to change this policy." The policy also provided for a 31-day grace period in which to pay premiums. If premiums were not paid during the grace period the policy would lapse and all benefits would end. The policy, however, could be reinstated after a lapse for failure to pay a premium on three conditions: "1. Your written request is received at our Home Office within five years of the due date of the premium first in default; 2. You show us that the Insured is still insurable according to our normal rules; and 3. You pay all overdue premiums plus 6% compound interest on those premiums."

In the instant case, the record shows that Lunsford paid his premiums through payroll deduction on July 17 and August 13. The September payment was made on the 16th, but was refunded at some later time so his account could be converted, at his request, to "check-o-matic" payments. The September, October, and November payments were received on November 15. Thus, it is clear that although the policy provided that premium payments were due on or before the first of the month, the company itself established a policy of collecting the premiums approximately two weeks into the grace period. The letter of January 14 did not notify Lunsford that his policy had lapsed as of December 1 when the draft was returned "insufficient funds." Instead, the policy provisions regarding lapse were waived because the company stated that the draft would be presented again on February 15 to cover the December premium. On February 11, when the company sent the second letter, it knew that the December premium and the January premium were unpaid. Once again, no mention of a lapse is to be found in the letter and the grace period is once again extended — this time for three weeks. In answers to interrogatories, the company admitted that Nancy Frainer, who was the author of both letters, had authority to send the letter of February 11, but took the position that the letter did not contain an offer.

While acceptance of late payment of two or three premiums is insufficient to show a custom of the insurer that would constitute a waiver of the policy provision regarding a lapse of coverage for failure to pay the premiums, *Gulf Life Ins. Co. v. Frost*, 125 Ga. App. 63, 65

(186 SE2d 456) (1971); *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 11 (195 SE2d 417) (1973), the company's whole pattern of collecting premiums in the instant case indicates a waiver of the due date. The premium payments under both the payroll deduction method and "check-o-matic" showed that the premiums were always collected within the grace period. The January and February letters were clearly authorized by the company as a method of collecting past due payments, as the answers to interrogatories state that they were form letters. They did not insist upon the policy's requirements for reinstatement of a lapsed policy, but spoke in terms of avoiding a lapse. Ms. Frainer's letter of February 11 clearly contained an offer to continue the coverage for three weeks. See *Allstate Ins. Co. v. Steedley*, 145 Ga. App. 699 (244 SE2d 632) (1978), wherein a similar letter was held to constitute an offer which might have been accepted during the period specified. In short, the company was extending the grace period during which Lunsford could pay his past-due premiums. If an insured dies during the grace period, no question can be raised as to the beneficiary's right to recover. *Life Ins. Co. of Virginia v. Williams*, 48 Ga. App. 10, 16 (172 SE 101) (1933). See also *Iowa State Travelers Mut. Assn. v. Cadwell*, 113 Ga. App. 128, 129 (147 SE2d 461) (1966); *Aetna Life Ins. Co. v. Palmer*, 159 Ga. 371, 374 (125 SE 829) (1924).

The fact that the company did not intend to be bound by the conditions set forth in its policy is further evidenced by its later acceptance of Mrs. Lunsford's checks of April 7 and 14. The latter check was sent eight days after the company was notified that Lunsford had died. Both checks were accepted and a receipt sent in May. The reinstatement provisions were not invoked. It was not until the letter of June 16 that the reason for refunding the payment was given as the death of Robert Lunsford on February 22. Even after that letter, an offer of reinstatement was made to Lunsford.

If an insurance company receives, accepts, and retains past-due premiums which are paid subsequent to the due date and expiration of the grace period, it renews the contract and waives the forfeiture for non-payments provided the acceptance is unconditional and the facts are known. An insurer which accepts past-due premiums or assessments in violation of its own regulations cannot invoke the same in order to avoid liability. *Causey v. Gulf Life Ins. Co.*, 62 Ga. App. 378, 380 (8 SE2d 535) (1940). If a forfeiture occurs, it does so immediately upon a breach of a condition of the contract upon which it is based. Forfeitures, not being favored in the law, once made cannot be recalled. *State Farm Fire &c. Co. v. Jenkins*, 167 Ga. App. 4, 6 (305 SE2d 801) (1983). See also *Farmers Mut. Co-op Fire Ins. Co. v. Kilgore*, 39 Ga. App. 528 (1) (147 SE 725) (1929). In the instant case, the company waived the forfeiture by extending the grace period by the

letter of February 11. Moreover, it accepted the premium and issued a receipt more than a month after it was informed Lunsford had died. It could not later deny coverage because it waived any forfeiture with full knowledge of the facts or, at the very least, "had . . . the means of knowledge accessible sufficient to satisfy itself, upon inquiry, as to the true state of facts." *Independent Life &c. Ins. Co. v. Pantone*, 80 Ga. App. 426, 431 (56 SE2d 153) (1949).

Accordingly, we find there was no issue of fact as to coverage requiring jury resolution, and the trial court did not err in granting summary judgment in favor of the appellee.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED DECEMBER 4, 1984.

*James H. Fisher II*, for appellant.
*Clifton M. Patty, Jr., James M. Aaron, Jr.* for appellees.