A91A0004. HOLLAND et al. v. ALLSTATE INSURANCE
COMPANY.
(409 SE2d 79)

BANKE, Presiding Judge.

The appellee insurance company filed this declaratory judgment action to determine its rights and obligations under a policy of motor vehicle accident insurance issued to one of the two appellants herein, Richard Holland. The other appellant, Chad Holland, was involved in an accident while driving the insured vehicle. The appellee denied coverage on the ground that the policy had been cancelled for nonpayment of premium prior to the accident. The case is before us on appeal from the grant of its motion for summary judgment.

The policy had been in force for several years prior to the accident. On numerous occasions during that period, the premium had not been paid when due; and on at least four of those occasions, the appellee had issued Holland a cancellation notice stating that the policy was being cancelled for nonpayment of premium. The policy had most recently been renewed on May 19, 1988, for a period of six months. On June 6, 1988, a check for $357.18 had been sent to the appellee in partial payment of the premium for this renewal. The remainder of the premium was due on July 19, 1988, but was not paid by that date. On July 27, 1988, the appellee mailed Holland a cancellation notice (which he denies having received) stating that the policy would be cancelled effective August 10, 1988, at 12:01 a.m. unless payment was received before then. The payment was not mailed, however, until September 14, 1988. The accident occurred two days later on September 16, 1988. The appellee was notified of the accident on September 19, 1988; and on September 23, 1988, it sent Holland a letter thanking him for the payment but informing him that the coverage had been cancelled. Enclosed with this letter was a check for partial refund of the payment.

In response to interrogatories propounded by the appellants, the appellee asserted that there had been four previous occasions when the policy had been "out of force" due to nonpayment of the premium. However, there is no suggestion in the record that the appellee had ever rebated any portion of Holland's premium payments to com-

pensate him for these periods when the insurance had supposedly been "out of force"; and the appellants submitted documentary evidence showing that on at least three occasions when the premium payment had been submitted after the announced cancellation date, the appellee had responded with a notice stating that it was continuing the coverage "without interruption." Asked during his deposition why he had waited until September 14, 1988, to make the premium payment at issue, Holland testified: "I was suffering from some adverse financial circumstances and I was waiting as long as I could in order to make the payment, but to keep the policy from lapsing or getting into a situation where I wasn't covered. *Because my perception at the time the payment was made is that I was covered.* It's just nothing more than coincidence that the check was made and sent on the 14th and the accident occurred on the [16]th." *Held*:

1. "[W]here, by a course of conduct, one leads another to believe that he will not insist upon the strict terms of the contract, he will not be heard to complain because the other contracting party relies upon his acquiescence[,] as evidenced by a course of conduct in similar situations. [Cits.]" *Southern Life Ins. Co. of Ga. v. Citizens Bank of Nashville*, 91 Ga. App. 534, 538 (86 SE2d 370) (1955). See generally OCGA § 13-4-4. "Whether the conduct of the parties constitutes a mutual departure from and waiver of a contract provision ordinarily is a question of fact for the jury. [Cits.]" *Southwest Plaster &c. Co. v. R. S. Armstrong & Bros. Co.*, 166 Ga. App. 373, 374 (304 SE2d 500) (1983).

We conclude that a fact issue exists in this case as to whether, by reinstating the coverage "without interruption" upon receipt of the premium on several previous occasions after the policy had supposedly been cancelled for nonpayment of premium, the appellee had led the insured to believe it would continue to follow this practice in the future, thereby creating a quasi-new agreement with him to that effect. One effect of the appellee's conduct in this regard was, of course, to enable it to charge the insured for past periods of non-coverage, during which, had a claim arisen, it could have taken the position that the policy was no longer in effect, just as it did in the present case. Indeed, there is absolutely no reason to believe that, but for the intervening accident which gave rise to this litigation, the appellee would not once again have accepted the late payment and reinstated the coverage "without interruption." Accordingly, because it appears from the evidence that the payment in question was in fact tendered to the appellee prior to the accident, we hold that a fact issue remains as to whether the coverage was back in force at the time the accident occurred.

2. The appellee contends that even if a mutual departure from the policy provisions occurred so as to give rise to a quasi-new agree-

ment, the cancellation was nevertheless effective because it was carried out in compliance with OCGA §§ 33-24-44 and 33-24-45. However, the issue in this case, as we see it, is not whether the insurance was properly cancelled for nonpayment of premium prior to the accident but whether, as a result of a quasi-new agreement created by the past conduct of the parties, the policy was reinstated following such cancellation.

*Judgment reversed. Sognier, C. J., McMurray, P. J., Pope and Cooper, JJ., concur. Birdsong, P. J., Carley, Beasley and Andrews, JJ., dissent.*

CARLEY, Judge, dissenting.

Construing the evidence most strongly against appellee, it issued to appellant-defendant a policy of automobile insurance which was thereafter periodically renewed. In connection with several of those renewals, appellee was forced to give appellant notice of impending cancellation for nonpayment of premiums. In connection with several of those cancellation notices, appellee accepted late payment from appellant even after the specified cancellation date. When the policy was renewed on May 19, 1988, and the timely payment of the premium was not forthcoming, appellee again gave appellant notice that the policy would be cancelled unless payment of the premium was made by August 10, 1988. However, appellant did not mail the premium until September 14, 1988.

I cannot agree that OCGA § 13-4-4 is authority for reversing the grant of summary judgment in favor of appellee. When appellant failed to make timely payment of the premium, appellee did not acquiesce, but mailed him notice of its intent to cancel the policy unless payment of the premium was made by August 10, 1988. This notice was certainly sufficient to apprise appellant of appellee's intention to rely upon the exact terms of the agreement. The majority holds that a genuine issue of material fact nevertheless remains because, on prior occasions, appellee had elected not to enforce such cancellation notices against appellant. While the intent of OCGA § 13-4-4 is to authorize a party to rely upon previous acceptances of his late payments, that authorized reliance lasts only *until* such time as he is given notice that his future conduct must be in conformity with the literal terms of the contract. It would be anomalous to hold that appellant, who *had* been given such notice, would nevertheless be entitled to ignore it based upon appellee's previous acceptances of his late payments.

In my opinion, one who is given notice pursuant to OCGA § 13-4-4 *must* govern his future conduct by the literal terms of the contract and is *not* entitled to assume that, as in any prior instances, the exact terms of the contract will not be enforced against him. Having been

given notice that his policy would be cancelled if the premium was not paid by August 10, 1988, appellant had no *legal right* under OCGA § 13-4-4 to assume that his policy would not be cancelled pursuant to that notice or that his cancelled policy would be reinstated. Since the undisputed evidence of record shows that appellee fulfilled any obligation that it may have owed to appellant under OCGA § 13-4-4, the trial court correctly granted appellee's motion for summary judgment. See *Murphy v. First Nat. Bank*, 182 Ga. App. 788 (1) (357 SE2d 266) (1987). Accordingly, I must respectfully dissent.

I am authorized to state that Presiding Judge Birdsong, Judge Beasley and Judge Andrews join in this dissent.

DECIDED JULY 9, 1991 —
RECONSIDERATION DENIED JULY 29, 1991.

*Brock & Clay, Marjorie M. Rogers*, for appellants.
*Webb, Carlock, Copeland, Semler & Stair, D. Gary Lovell, Jr., David D. Cookson*, for appellee.