27391. CONTINENTAL CASUALTY COMPANY v.
UNION CAMP CORPORATION et al.

ARGUED SEPTEMBER 11, 1972—DECIDED JANUARY 4, 1973.

*Adams, Adams, Brennan & Gardner, A. Pratt Adams, Jr.,* for appellant.

*Bouhan, Williams & Levy, Robert M. Williams, Walter C. Hartridge, II,* for appellees.

HAWES, Justice. The defendant, Continental Casualty Company, appeals from a judgment entered on a jury verdict ordering it to specifically perform three designated group accident and sickness insurance policies which had been issued by it to the plaintiff, Union Camp Corporation, covering Union Camp's employees and their dependents at its Savannah, Georgia, plant. The issues raised on this appeal relate to whether the verdict and judgment in favor of the plaintiff were authorized by the evidence and to whether it was error for the trial court to refuse certain written requests to charge timely filed by the defendant.

The insurance policies in question were issued in renewal of policies previously issued providing the same coverage. The policies here involved covered a period from October 1, 1968 through October 1, 1971. The policies insured some 3,000 employees at plaintiff's Savannah facility and the dependents of those employees against losses resulting on account of accident or sickness as set forth in the policies. Each of the policies provided that the premium due thereon would be payable in advance on the first day of each month, or within a grace period of 31 days thereafter. Each policy contained a provision that, "If any premium is not paid within the days of grace, this policy shall thereupon be automatically discontinued, but the employer shall, nevertheless, be liable to the company for the payment of all premiums then unpaid, together with the premium for the days of grace."

It appears that under the provisions of the policies in question Union Camp would take a census of its employees covered by the policies of insurance on the first day of each month and apply that census to the premium rates according to the number of employees covered as individuals only, the number of employees covered with one dependent, and the number of

employees covered with more than one dependent. The monthly premium would thus be computed on the basis of that census and a voucher prepared and approved in Savannah. It was the practice of the employees in the Savannah office of Union Camp to prepare such voucher on the first day of each month or within a day or two thereafter and to forward the same to the office of Union Camp at Wayne, New Jersey, from whence a check in the payment of the premiums would be routinely issued and forwarded to the defendant Continental Casualty Company in Chicago. The evidence shows that with the exception of four months out of a period of 81 months the premium was always paid within the 31-day grace period, but never on the nominal due date. For the months of August, 1968, February, March and April of 1970, the premiums due on the first day of each such month were accepted 11 days, 31 days, 3 days and 17 days beyond the grace period. The premium due on July 1, 1970, was not mailed from the office of Union Camp in Wayne, New Jersey until either August 3 or August 4, 1970, and did not reach the defendant in Chicago until August 6, 1970. On August 4, 1970, at 5:13 p.m., Savannah time, Continental wired Union Camp at Savannah advising that the three described policies "are automatically discontinued by Continental Casualty Co. effec[tive] 12:01 a.m., Standard time, 8-1-70 at the policy holder's place of business. The above policies are being discontinued under the provisions outlined in Section II of each policy—for nonpayment of premium within the grace period."

■ The question thus presented to the trial court for decision and urged before this court on appeal is whether under all the facts appearing the defendant insurance company, before insisting upon strict adherence by Union Camp to the provisions of the policies of insurance respecting the payment of premiums should have given Union Camp reasonable notice of its intention to rely on the exact terms of the contract, and whether under such

facts there had been such a departure from the terms of the contract as to constitute a quasi new agreement in accordance with the principles set forth in Code § 20-116. Appellant, Continental Casualty Company, contends that the evidence shows at most a mere inadvertent omission on the part of Union Camp to mail the premiums within the time fixed by the policies of insurance, a mere indulgence on four prior occasions by Continental of Union Camp and, therefore, no intended (deliberate) mutual departure from the terms of the contract respecting the time of payment of the premiums. While we recognize that a departure from the terms of a contract which is relied upon by one of the parties so as to require a notice of intention to insist on strict compliance with the original contract terms under the provisions of Code § 20-116 must be mutual between the parties and intended, and must be such as, in law, to make practically a new agreement as to the stipulations contained in the original contract (*Bearden Mercantile Co. v. Madison Oil Co.,* 128 Ga. 695, 704 (58 SE 200); *Southern Feed Stores v. Sanders,* 193 Ga. 884, 887 (20 SE2d 413); *Carter v. General Finance .&c. Corp.,* 96 Ga. App. 423, 425 (100 SE2d 99)), yet, whether there has been such a mutual and intended departure so as to make practically a new agreement is generally a question for a jury to determine. *Prothro v. Walker,* 202 Ga. 71 (1a) (42 SE2d 114). We also recognize the fact that the mere acceptance by an insurer on two or three occasions of monthly or periodic premium payments after their due date or beyond the grace period provided in the policy would not, standing alone, constitute a waiver of the provisions of the policy respecting the time of payment of the premium nor make for the parties a new contract in that regard upon which the insured would be entitled to rely and insist.

If the mere acceptance by Continental of four late payments was the only fact in this case, we would be

constrained to sustain the contention of the appellant that the evidence demanded a finding that there had been no such new agreement and that a verdict for the defendant was demanded. However, the evidence shows that with respect to the February and March delinquencies the defendant wrote John D. Carswell Company, the broker in Savannah through whom the insurance coverage had been written, advising that while they had received copies of the reports for those months showing $95,041.43 to be due for February, and $81,476.26 to be due for March, the checks in payment of those premiums had not been received. This communication was dated April 7, 1970 and requested the broker to furnish "copies of the front and back of the canceled checks in question, in order for us to check further." The broker replied on April 13, 1970 that the February and March checks in the respective amounts were forwarded from Union Camp Corporation's Wayne, New Jersey office on April 3, 1970. The employee of John D. Carswell Company who signed that communication testified that she, upon receipt of the foregoing inquiry from Continental, telephoned the employee at Union Camp who handled insurance matters to secure the necessary information before replying to Continental's inquiry. An employee of Union Camp testified that she recalled having received an inquiry from someone at John D. Carswell Company respecting a late payment. She could not be more specific as to the identity of the person at John D. Carswell Company with whom she talked nor as to the time of the conversation. However, it is clearly inferable from this evidence that the tenor of the inquiry of Continental Casualty dated April 4, 1970 was communicated to Union Camp and that the information which was communicated to Continental Casualty Company in response to their inquiry was information furnished by Union Camp.

With respect to the delinquent April payment,

Continental's D. J. Vath, manager of group collections, wrote Union Camp on May 14, 1970: "The remittance and billing on this group policy were due on the above date but have not been received in this office. If there is any reason why your billing and remittance *cannot* be sent right away, please complete the bottom portion of this form and return it to us today." The reference appearing at the head of that letter is to "Group Policy No. 01-G-7354 payment due: 04-01-70." In reply to that inquiry, plaintiff's B. R. Kilroy, Manager, "Savannah Tax and Insurance," wrote, "Check for payments due 4-1-70, and 5-1-70 will be mailed to day (5-18-70)." While it is true that Continental's letter of May 14, 1970, appears to have made reference to a policy which is different from any of those involved in this litigation, we have carefully perused the oral testimony of the witnesses, both for the plaintiff and for the defendant, and these witnesses seem to have treated this correspondence as in fact having reference to the policies here in question. While the writer of the May 14th letter did not testify on behalf of the defendant, counsel for the defendant did cross examine witnesses for the plaintiff who had identified this correspondence. Also, two witnesses, Robert J. Hoffman, an Assistant Vice President of the Group Division of Continental, and Richard Edward O'Keefe, Superintendent of the Group Division, Eastern Division of the defendant testified for the defendant. Nowhere in the testimony of those witnesses was any contention sought to be made by defendant that the inquiry of May 14, 1970, was not understood by both the parties to have reference to the policies here in question. It seems to have been so treated by all the parties involved and we will so treat it.

We think it is clear from the tenor of the inquiries of April 7, 1970, and of May 14, 1970, that they were calculated to lead Union Camp to believe that the failure to forward premiums on these group policies strictly

within the 31-day grace period was not of such consequence as to result, or likely to result in cancellation of the policies. Appellant attempts to characterize those communications as complaints respecting the late payment of the premiums and to thereby invoke the principle applied by the Court of Appeals in *Carter v. General Finance &c. Corp.*, 96 Ga. App. 423, 425, supra. However, those communications simply cannot be characterized as complaints. They were at most mere inquiries as to when payment of the premiums could be expected and clearly implied that payment would be accepted if sent within a reasonable time thereafter. This is especially true of the May 14th letter to Union Camp which was written at least 12 days after the expiration of the grace period. The jury was authorized to find therefrom that Union Camp was misled and lulled into a false sense of security, such as would render it inequitable for Continental Casualty Company to thereafter invoke the automatic cancellation provisions of the policy and to declare the policy forfeited on account of the late payment of the premiums due thereon without first giving to Union Camp written notice of its intention to insist on strict adherence to the terms of the policy with respect to the payment of the premiums. It follows that the evidence did not demand a verdict for the defendant and the trial court did not err in overruling the general grounds of defendant's motion for a new trial and in overruling its motion for a judgment notwithstanding the verdict. Grounds of enumerated error numbered 1 through 5 are without merit.

■ Several grounds of enumerated error complain of the failure of the trial court to charge the jury in accordance with timely written requests. As we view the case, only one of these grounds presents a serious question for our consideration. However, before we proceed to consider these grounds on their merits, we must dispose of a

contention made by counsel for the appellee in oral argument before this court and in a supplemental brief which has been filed. In that argument, counsel invokes a rule applied by the Court of Appeals in *U. S. Security Warehouse v. Tasty Sandwich Co.,* 115 Ga. App. 764 (1), supra, and followed by numerous subsequent cases decided in the Court of Appeals, construing § 17 of the Appellate Practice Act. Those cases hold that in order for an appellant to secure a ruling in the appellate court respecting the refusal of the trial court to charge a timely written request, it is incumbent upon counsel to except in the trial court to such refusal to charge, and in such exception to state distinctly his grounds of objection, as well as to specify the particular charge which should have been given. In the instant case, at the conclusion of the charge, the court afforded opportunity to counsel for both sides to object to the charge. After counsel for the plaintiff had stated his objections, the court turned to counsel for the defendant and inquired whether he had any objections. The following colloquy ensued: "Mr. Adams: Your Honor, I object to the failure of the court to charge those charges that I gave that the court did not give. If it's necessary for the record for me to read them, I will, but I gave them in writing. You want me to go through reading them? The Court: You just object to me not giving everything you gave me to charge the jury, is that right? Mr. Adams: That you did not give. Mr. Hartridge [counsel for plaintiff]: We stipulate that that would constitute a sufficient basis for the record so he won't have to read them all. They are in the record. The Court: Is that all? Mr. Adams: Yes, sir. The Court: I'll let the charge stand as I've given it."

While the case above cited (*U. S. Security Warehouse, Inc. v. Tasty Sandwich Co.,* 115 Ga. App. 764 (1)) construing § 17 of the Appellate Practice Act appears to be a well-reasoned opinion based on ample Federal authority construing comparable provision § 51 of the

Federal Rules of Civil Procedure, we do not think that the rule announced therein and subsequently followed by the Court of Appeals in numerous cases is sound and we refuse to adopt it. A perusal of § 17 of the Appellate Practice Act (codified as Code Ann. § 70-207) reveals that the matter dealt with therein relating to the charge of the court is subdivided into three separate paragraphs. Paragraph (a) relates to the manner in which a party may complain of the giving or of the *failure* to give an instruction to the jury. It requires that a party must object after the charge stating distinctly the matter to which he objects and the grounds of his objection. The obvious purpose of this provision is to afford the trial court an opportunity to correct the charge which has been given, and to consider the grounds of an objection at a time before the jury has retired to consider its verdict and at a time when corrections can be made in the charge if upon such consideration the court deems a correction proper. On the other hand, Paragraph (b) relates to requests to charge and to the manner in which such requests shall be submitted and handled by the court. Unlike Paragraph (a), Paragraph (b) contains no provision relating to objections to the *refusal* to grant requests to charge. The reason for the omission of such provisions from that subparagraph is obvious. When a party has presented to the court a written request that it instruct the jury on the law as set forth therein at a time directed by the court, or in any case, no later than at the close of the evidence, the court normally affords such party at that time an opportunity to state the grounds upon which he contends such submitted request to charge should be given. The court is thus at that time put on notice as to the grounds upon which it is urged such request to charge should be given. This paragraph provides that copies of such request shall be given to the opposing counsel at the time they are submitted to the court. This could serve no useful purpose other than to

afford opposing counsel an opportunity to argue to the court before the granting or refusing of such request his contentions with respect to whether such requested charges should be given. Thus the court is afforded every opportunity to be informed as to the contention of the respective parties concerning such request and no useful purpose could possibly be served by requiring that the grounds upon which counsel contend the charge should be given be repeated after the court has announced to counsel its decision that the requested charge will not be given and has instructed the jury omitting such requested charge. After the charge has been given, to require a restatement of grounds of objection to the refusal to charge timely submitted written requests would be putting form ahead of substance—a result we should always endeavor to avoid.

It is noteworthy that the substance of Paragraphs (a) and (b) of § 17 of the Appellate Practice Act is embodied in a single paragraph in Rule 51 of the Federal Rules of Civil Procedure. It is thus manifest that the legislature in enacting § 17 of the Appellate Practice Act intended to depart from the Federal Rule in the matter of requests to charge. Thus, the Federal cases cited and relied on by the Court of Appeals in the *U. S. Security Warehouse* case, supra, are based upon a substantially different law and are not authority for the construction which the Court of Appeals has given to § 17 of our Appellate Practice Act. We, therefore, here expressly disapprove the ruling of the Court of Appeals in Division 1 of the opinion in *U. S. Security Warehouse v. Tasty Sandwich Co.,* 115 Ga. App. 764, supra, and all other cases to a like effect. Accordingly, we hold that since the record and transcript before this court in this case clearly indicate that counsel for the appellant did object to the refusal of the trial court to give his timely submitted request to charge, this court will pass upon the question whether such refusal constituted harmful error.

■ The defendant requested the court to charge the jury: "I charge you that if the defendant in the present case as a matter of mere indulgence to the plaintiff extended the time for one or more premium payments under the contract, this would not affect the defendant's right to enforce the contract according to its original terms and to declare a forfeiture for subsequent late premium payments unless the plaintiff had given consideration for such extensions or indulgence." This request embodied a legally correct principle of law. *Monk v. General Motors Acceptance Corp.,* 56 Ga. App. 663, 665 (193 SE 466); *Lax v. Hospital &c. Credit Union,* 96 Ga. App. 525 (2) (100 SE2d 613). It was not error for the court to refuse to give this request to charge, however. It must be remembered that it is no longer essential that the court give an instruction in the exact language of a request. The requirement that a request to charge must be given in the exact language where it is pertinent and legal was embodied in former Code § 70-207 which was repealed by the Appellate Practice Act of 1965. Ga. L. 1965, pp. 18, 39 (§ 21 (p)). The requirement of the law is satisfied where the court instructs the jury substantially upon the principles embodied in the request.

As we view the principle embodied in this request, it simply says that if one of the parties to a contract in accepting performance by the other party not strictly in accordance with the terms of the contract does so merely gratuitously or by way of indulgence, then it cannot be said that the acceptance of performance under those circumstances supplies the requisite intent on the part of the party so accepting performance as to render the departure mutual. The court fully instructed the jury as to the requirement that before a party would be bound under Code § 20-116 to give notice of intention to rely on the exact terms of an agreement after a departure the departure must be mutual. The court charged: "Now if you find that the parties, by implication, had made what

amounts to a new contract that permitted late payments, then your verdict should be for the plaintiff. However, I charge you that receipt of late payments in itself is not sufficient. The action of the parties must have been such so that both parties mutually formed a quasi new agreement, and unless such quasi new agreement was formed, then your verdict must be for the defendant . . . In this case, the plaintiff admits the premium for July, 1970, was paid outside of the 31-day grace period. Therefore, I charge you that under the policy as written the defendant had the right to take advantage of the policy termination, and you must therefore find for the defendant unless you find that both sides by their conduct mutually changed the terms of the contract." Following instructions in the language of Code § 20-116, the Court charged: "Still, in order for this rule to have application, it is necessary that the circumstances be such as will in law imply a mutual new agreement whereby new, distinct and definite terms are supplied in lieu of those provided by the original contract. Now while a distinct stipulation in a contract may be waived by the conduct of the parties, it must appear that it was the intention of both the parties to treat such stipulation as no longer binding. The mere fact that one party so intended would not bring about this result. Rather, it must appear that it was the mutual intention of the parties to so change the contract, that is, the circumstances must be such in law to make practically a new agreement and to alter the stipulations contained in the original contract. A provision of a contract is not changed where only one of the parties elects to treat the stipulation as no longer binding unless the other party concurs in such a change. Therefore, I charge you that if you find from the evidence that only one party disregarded the terms of the contract and that the other party did not concur in such changes, then it shall be your duty to find for the defendant." These quoted charges substantially embodied the

principles set forth in the request to charge. Together with other portions of the charge which it is unnecessary to quote for the purposes of this opinion they fully instructed the jury as to the law which they should apply in reaching a verdict in this case. It was not error for the trial court to refuse this request.

■ The remaining requests to charge submitted by counsel for the appellant which were refused by the trial court either did not embody legally correct principles of law, or embodied comments by the trial court on what the evidence showed, or bore argumentative references to the evidence, and were properly refused. The refusal of the trial court to charge the jury in accordance with the principles of Code § 37-104 to the effect that he who would have equity must do equity and give effect to all the equitable rights of the other party respecting the subject matter of the suit was not error. There was no evidence in the case that the plaintiff had failed to do equity. The mere untimely payment of premiums, standing alone, when such untimely payments were accepted by the defendant would not constitute a failure "to do equity."

*Judgment affirmed. All the Justices concur except Jordan, J., who concurs in the judgment but not all that is said in the opinion, and Gunter, J., who dissents from Division 1 and from the judgment of affirmance.*