## 69458. PRUDENTIAL INSURANCE COMPANY OF AMERICA v. NESSMITH.
### (329 SE2d 249)

POPE, Judge.

This discretionary appeal comes from the denial by the trial court of appellant's (Prudential) motion for summary judgment. Appellee Paul E. Nessmith, Sr. brought this action to recover the proceeds of a life insurance policy with a face value of $100,000. The named insured was Nessmith's son, Paul E. Nessmith, Jr. Appellee father was the beneficiary of the policy. The insured died of a gunshot wound on September 15, 1982. The annual premium was due on July 1 of each year. The contract of insurance provided for a 31-day grace period, thus extending the time for payment of the premium to August 1 of each year. At the time of the insured's death, the premium due on July 1, 1982 had not been paid. The policy provided that insurance coverage would lapse if the premium was not paid within the grace period. Appellee argues that the insured, Nessmith, Jr., and Prudential had mutually temporarily departed from the terms of the contract requiring payment by August 1 of each year because the year preceding his death, Nessmith, Jr. had been allowed to pay the premium on September 23 and in 1979 had been allowed to pay on August 2 and to have the policy continue. *Held*:

OCGA § 13-4-4 reads as follows: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice." "'While a distinct stipulation in a contract may be waived by the conduct of the parties, it must appear that it was the intention of the parties to treat such stipulations as no longer binding. The mere fact that one party so intended would not bring about this result. It must appear that it was the mutual intention; that is, the circumstances must be such as, in law, to make practically a new agreement as to the stipulations in the original contract.'" *Southern Feed Stores v. San-*

*ders*, 193 Ga. 884, 887 (20 SE2d 413) (1942). "Though a quasi new agreement arises where the parties mutually depart from the terms of the original agreement and pay or receive money under such departure [cit.], there must be more than a simple breach on the part of one of the parties; there must be a mutual departure." *Crawford v. First Nat. Bank of Rome*, 137 Ga. App. 294, 296 (223 SE2d 488) (1976). "[O]ne acceptance of a late payment is not enough to require the insurer to give notice to the insured of intention to rely on the exact terms of the agreement as provided in [OCGA § 13-4-4] . . . 'Evidence of the acceptance of one single over-due premium or assessment, or of a few separate instances, is insufficient of itself to establish a waiver of forfeiture claim for non-payment of a subsequent premium or assessment.' [Cit.]" *Sovereign Camp W. O. W. v. Whitaker*, 57 Ga. App. 418, 423 (195 SE 584) (1938). In the case of *Unigard Mut. Ins. Co. v. Fox*, 142 Ga. App. 706 (236 SE2d 851) (1977), the court applied this rule to hold that evidence of a single payment made outside the grace period allowed by the policy was not sufficient as a matter of law to create a jury issue under OCGA § 13-4-4.

To avoid the obvious consequences of the rules stated above, able counsel for appellee makes several arguments. First, he argues that the evidence shows that Prudential did more than merely accept a few late payments; he argues that Prudential, through its agent, Johnson, solicited payment of the premium outside the term allowed by the contract thus inducing belief on the part of the decedent insured, Nessmith, Jr., that non-payment of premiums within the period allowed by the contract was not of such consequence as to trigger lapse of the policy if payment were made within a reasonable time. Thus, he argues that this situation is controlled by the holding in *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8 (1) (195 SE2d 417) (1973). In *Continental Cas.*, there was evidence of letters written by employees at central headquarters of Continental Casualty to the insurance broker for Union Camp and to Union Camp directly, the tenor of which led Union Camp to believe that arrangements to pay outside the policy term could be made and would be accepted. These letters were written outside the grace period allowed by the policy. We have examined the record in the case at bar and find evidence that Johnson, the agent for Prudential, would receive notice from the home office approximately two weeks to ten days before the end of the grace period that Nessmith, Jr.'s premium had not been paid. He would then contact Nessmith, Jr. to remind him to pay. There is no evidence that Johnson or anyone else from Prudential ever initiated contact with Nessmith, Jr. for the purpose of soliciting payment of the premium outside the grace period. Therefore, the facts in the instant case are distinguishable from those in *Continental Cas.*, supra, and are not sufficient to bring this case within the ambit thereof.

As noted above, the contract specifically provided that it would lapse if the premium was not paid within the grace period. The contract also provided that the terms of the policy could be changed only by certain officers of Prudential. Although a non-waiver clause may be shown to be waived by conduct of an insurer, see *Adams v. Washington Fidelity Nat. Ins. Co.*, 48 Ga. App. 753 (1) (173 SE 247) (1934), there is no evidence of record to warrant invocation of this rule. As set out above, there is no evidence that Prudential solicited payment of premiums outside the grace period. Counsel for appellee argues that Prudential's acceptance of the September 23, 1981 payment and of the August 2, 1979 payment is evidence of conduct of waiver because by the terms of the policy it lapses immediately upon non-payment and may be reinstated only upon a showing by the insured of evidence of insurability satisfactory to Prudential, and payment of the premiums in default plus interest thereon. There being nothing in Prudential's records showing an application for reinstatement, he argues that Prudential by conduct waived the non-waiver clause. We do not agree. First, the agent, Johnson, testified that he helped Nessmith, Jr. prepare applications for reinstatement on each of the two occasions Nessmith, Jr. paid outside the grace period. Second, the contract allows Prudential to reinstate the policy upon payment of the premium due and proof satisfactory to Prudential of the insurability of the applicant. The contract requires no particular form. The fact that Prudential did not insist upon the interest due on the late payments is not sufficient to create an issue of material fact. See *Gulf Life Ins. Co. v. Frost*, 125 Ga. App. 63, 65 (186 SE2d 456) (1971). Thus, the evidence shows merely that Prudential followed the terms of the contract in reinstating the policy on those occasions when Nessmith, Jr. was late. This does not show a pattern of mutual disregard of the terms of the contract.

Next, appellee argues that because the business records of Prudential never show an indication of lapse and that, upon inquiry after the insured's death, an intra-company communication showed the policy "in force," this shows conduct to create a material issue of fact. We disagree. There is no showing that the records relied upon were made or signed by a person authorized under the contract to make changes in the contract. Therefore, they cannot be construed as changing the contract, which by its terms had lapsed, regardless of the state of Prudential's internal records.

Finally, appellee argues that Prudential did not follow the terms of the contract in paying accrued dividends existing at the end of a premium in default. The contract specified that such dividends were to be paid immediately. Appellee shows that dividends are routinely not paid until ninety days after lapse. In any case, such evidence would merely be proof of a quasi new agreement regarding the han-

dling of accrued dividends; it does not show proof that Prudential agreed to extend time for payment of the premium. This is not sufficient to create a material issue of fact. See *Newby v. Bank of Pinehurst*, 159 Ga. App. 890 (285 SE2d 605) (1981) (evidence of acceptance of late but regular payments not evidence of quasi new agreement in regard to non-payments).

Therefore, we find evidence only of Prudential's indulgence of late payments on two occasions. We find no evidence of a course of conduct to alter the terms of the contract. Thus, the trial court erred in denying Prudential's motion for summary judgment and we reverse.

*Judgment reversed. Banke, C. J., and Benham, J., concur.*

DECIDED MARCH 8, 1985 —
REHEARING DENIED MARCH 20, 1985 — ▮▮▮▮▮▮▮▮

*Ben Kingree III, John B. Miller*, for appellant.
*William S. Stone*, for appellee.