A95A2350. WRIGHT CARRIAGE COMPANY et al. v. BUSINESS DEVELOPMENT CORPORATION OF GEORGIA, INC.
(471 SE2d 218)

BEASLEY, Chief Judge.

The Wright Carriage Company began its business operations in 1983, producing conversion vans and other customized vehicles. Over the course of four years beginning in 1985, it obtained three loans from The Business Development Corporation of Georgia ("BDC"), and its president obtained a fourth loan, the proceeds of which were applied to the business. The president and her husband, who was the general manager and corporate secretary of the company, were its sole shareholders.

Each of these secured loans had an interest rate which fluctu-

ated with the prime rate, and BDC sent monthly statements to the borrowers notifying them of the amounts due. This procedure was followed from the initial loans in September 1985 to November 1989, when the loans were foreclosed for nonpayment. The payments were due on the first of each month. The Wrights worked with BDC's Senior Vice President Karraker with respect to the loans throughout the negotiations and life of the loans.

Up until July 1989, all of the payments were made within ten days of the due date. More specifically, 73 out of 119 were made after the first, but only one was made as late as the tenth. Some were made before the due date and others were made within a few days of the first. Because of a worsening financial condition, the borrowers asked for deferment of the August, September, and October 1989 payments. Deferment was granted and also approved by the U. S. Small Business Administration, guarantor of two of the loans. This deferment was not contained in a single comprehensive document but was nonetheless agreed upon by the parties, and each of the statements sent during the period of the deferment stated that payments were to resume on November 1, 1989.

The borrowers did not make payment on November 1 but instead sought further deferment, which BDC refused. It also refused a compromise of the debt, which was proposed by the borrowers at a meeting on November 22. There being no payment, BDC accelerated the entire indebtedness on November 27, notified the borrowers and their attorney, declared default, and began foreclosure. BDC's attorney received a check from the borrowers for the November and December payments around December 1, but refused it.

The borrowers filed a Chapter 11 petition in bankruptcy and the foreclosure was halted. Several months later, they sued BDC for breach of contract, defamation, attempted wrongful repossession, and intentional infliction of emotional distress. BDC counterclaimed for breach of contract. The jury found in favor of BDC both on its counterclaim and on the borrowers' claims. The borrowers' motion for new trial was denied and they appealed, citing as error two jury charges given by the trial court and one charge borrowers requested which was rejected by the court.

1. The borrowers contend that the parties by their course of conduct mutually departed from the terms of the original loan contracts as to the date monthly payment was due and that the requirement that payment be made by the first of the month was thus suspended. Under OCGA § 13-4-4, they argue, BDC could not insist on the November 1 payment due date — and therefore could not declare the borrowers in default and accelerate the loans — until it gave them notice of its intent to again rely on the exact terms of the contracts.

Several jury charges were given in this connection, including an

almost verbatim recitation of OCGA § 13-4-4. It provides: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice."

The court also gave the following charge taken directly from Suggested Pattern Jury Instructions 65 (Council of Superior Court Judges of Georgia, 3d ed. 1991): "In order for [OCGA § 13-4-4] to have application, it is necessary that the circumstances be such as will in law imply a mutual new agreement, whereby new, distinct, and definite terms are supplied in lieu of those provided for by the original contract. *Mere acceptance of past-due payments, made at irregular times and not in accordance with the terms of the contract, would not be sufficient.* The departure from the terms of the contract must have been substantial and such as to make it inequitable for the creditor to demand without previous notice all past-due payments, or to proceed to collect by suit." (Emphasis supplied.) The borrowers enumerate as error the court's charge, given at BDC's request over the borrowers' objection. They claim the italicized language contradicts the statute and negates its effectiveness in supporting their position, even though the charge is from the Suggested Pattern Jury Instructions.

Neither party could supply case authority for this portion of the charge, and as pointed out by the borrowers, it is misleading. Reading the charge in its entirety suggests its drafters intended the italicized portion to mean that the mere acceptance of late payments on an occasional, irregular basis is not sufficient. However, while the statute provides that a mutual departure suspends the affected portion of the contract,[1] the challenged language read literally suggests that acceptance of past due payments is not the sort of variance deemed to be a mutual departure, that it must somehow be more "substantial." This view ignores the actual language of the statute and eliminates the concept that a course of conduct or business practices of the parties may vary the due date term of a written agreement, so that the lender may not then declare a default without granting "reasonable notice" of its intention to rely on the strict terms of the loan documents. *Hayes v. Fidelity Acceptance Corp.*, 147 Ga. App. 144, 145 (248 SE2d 209) (1978). In addition, it implies that the due date is an insignificant term, a view that lenders would un-

---

[1] Mutual departure affects only the particular terms at issue; other executory terms in the agreement remain in force. *State Mut. Ins. Co. v. Strickland*, 218 Ga. 94 (126 SE2d 683) (1962).

doubtedly dispute.

A more precise statement of the law, consistent with the Code section, is that "evidence of the buyer's repeated, late, irregular payments, which are accepted by the seller, does create a factual dispute as to whether a quasi new agreement was created under [OCGA § 13-4-4]." *Smith v. Gen. Fin. Corp. of Ga.*, 243 Ga. 500, 501 (255 SE2d 14) (1979). Accord *Baxter v. Ga. Fed. Sav. &c. Assn.*, 152 Ga. App. 753 (264 SE2d 242) (1979); *Adamson v. Trust Co. Bank*, 155 Ga. App. 646, 648 (271 SE2d 899) (1980); *Mayo v. Bank of Carroll County*, 157 Ga. App. 148, 149 (276 SE2d 660) (1981). Although the court gave a charge based on this language, the challenged charge suggests the opposite. We urge the Council of Superior Court Judges to make an appropriate change in the pattern instructions.

None of this is to suggest that mere acceptance by a lender on a couple of occasions of periodic payments after their due date would, standing alone, constitute a waiver of the due date term, nor create a new due date term upon which the borrower would be entitled to rely and insist. *Prudential Ins. Co. of America v. Nessmith*, 174 Ga. App. 39, 40 (329 SE2d 249) (1985); *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 11 (195 SE2d 417) (1973); *Sovereign Camp W.O.W. v. Whitaker*, 57 Ga. App. 418, 423 (195 SE 584) (1938). If a pattern develops of the lender repeatedly accepting late payments, however, then a jury is entitled to find the parties have established a course of conduct that varies that term of the agreement. *Smith*, supra at 501; *United Svcs. Auto. Assn. v. Gottschalk*, 212 Ga. App. 88, 90 (1b) (441 SE2d 281) (1994); *Holland v. Allstate Ins. Co.*, 200 Ga. App. 668, 669 (1) (409 SE2d 79) (1991).

Although we acknowledge that the charge was not as accurate as it might have been, we find any error harmless to the borrowers under these circumstances. *American Fidelity &c. Co. v. Farmer*, 77 Ga. App. 192, 195 (48 SE2d 141) (1948). Both BDC and the borrowers assume that the underlying issue here is whether there was a mutual departure from the written due date term and the creation of a new due date term, so that BDC's foreclosure and acceleration of the loan was wrongful since it did not give notice that it intended to rely on the original written term. The mutual departure from the due date terms for the particular payments at issue here — the August, September, and October 1989 payments — was not the result of course of conduct or business practice of the parties. There was an *express* mutual departure from the original contracts, a new agreement, resulting in deferral of payment until November 1, and there is no evidence that BDC in any way acquiesced in a further deferment. Any evidence of mutual departure from the terms of the original loan documents has no bearing upon the controversy concerning the new agreement to allow the borrowers to defer the three specific pay-

ments. *Minor v. C & S Nat. Bank,* 177 Ga. App. 115, 118 (338 SE2d 466) (1985). The November 1 payment date was agreed upon by the parties, BDC made reference to it in each monthly notice sent to the borrowers, and demand for by November 1 was expressly made to the borrowers prior to foreclosure and acceleration of the loans.

The record does not establish whether the parties intended the November 1 payment to consist merely of the payment that would have been due on November 1 under the original contract or also to include the three deferred payments. Whether this issue was clear to the jury when determining the facts and to the trial judge when instructing the jury is not disclosed in the record. In either event, whether four payments were due on November 1 or only the November payment, the indisputable fact remains that the November payment was not made. It was not paid on or before November 1, or within ten days as had been done on other occasions, or within even 27 days, the 27th day being the day the lender issued notices of acceleration and commenced foreclosure. The lender had made abundantly clear that payment was due on November 1.

Even if BDC's practice of accepting late payments could be construed as a mutual departure that the borrowers could rely on in submitting payment beyond November 1, they failed to tender the payment in accordance with even their pre-August practice, since there is no evidence that BDC ever accepted a payment after the tenth of the month. Instead, the borrowers in effect made no payment of the deferred amount,[2] and "while it is arguable that [BDC and the borrowers] may have reached a quasi new agreement as to acceptance of late payments, there is no evidence that [BDC] consented to non-payment. . . . Before the provisions of [OCGA § 13-4-4] would apply to non-payment, the evidence must establish a pattern or course of conduct evidencing an agreement or waiver of the provisions in the original contract relating to non-receipt of monthly payments." *Newby v. Bank of Pinehurst,* 159 Ga. App. 890, 891 (285 SE2d 605) (1981). See also *Booth v. Gwinnett Fed. Savings &c. Assn.,* 200 Ga. App. 60, 61 (406 SE2d 568) (1991); *Gordon v. South Central Farm Credit,* 213 Ga. App. 816, 819 (446 SE2d 514) (1994). BDC never agreed to non-payment by course of conduct. Thus, even if the pattern statement were in error as a matter of law, giving it could not have harmed appellants.

---

[2] No payment was made at all until after the loans were accelerated, and at such a late date, BDC's counsel refused it. The check was marked as the November and December payments, even though the loan had been accelerated. Payments made after acceleration are treated as payments on the full indebtedness, rather than installment payments made pursuant to any prior agreement to defer payments. See *Adamson v. Trust Co. Bank,* 155 Ga. App. 646, 649 (271 SE2d 899) (1980).

2. The borrowers also challenge another sentence of pattern charge no. 65 given by the court: "In order for this rule to have application, it is necessary that the circumstances be such as will in law imply a mutual new agreement, whereby new, distinct, and definite terms are supplied in lieu of those provided for by the original contract." This language is taken directly from early Georgia cases. See *Bearden Mercantile Co. v. Madison Oil Co.*, 128 Ga. 695, 704 (58 SE 200) (1907); *Ball v. Foundation Co.*, 25 Ga. App. 126 (103 SE 422) (1920); *Jones v. Lawman*, 56 Ga. App. 764 (194 SE 416) (1937). See also *Continental Cas. Co.*, supra at 11. This portion of the charge merely states the requirement that a jury may only find that terms established by the course of conduct or business practices of the parties have replaced written express terms if the new terms are definite and clear. It conflicts neither with the statute nor with the holding in *Smith*, supra.

3. The borrowers cite as error the trial court's refusal to grant a specific charge they requested, citing as authority for the charge both OCGA § 13-4-4 and *Eaves & Collins v. Cherokee Iron Co.*, 73 Ga. 459, 470 (1884). The statute was derived from this early case. See Annot., OCGA § 13-4-4; *Maguire v. Ivey*, 212 Ga. 151, 153 (91 SE2d 35) (1956). The requested charge and the authorities relied on by the borrowers do not in any substantive way conflict with the pattern charges given by the court, except as we noted in Division 1, and we thus find no error. See *Shirley v. State*, 245 Ga. 616, 619 (3) (266 SE2d 218) (1980).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED MARCH 8, 1996 —
RECONSIDERATION DENIED MARCH 29, 1996 — 

*Lamar, Archer & Cofrin, Robert C. Lamar, David W. Davenport*, for appellants.

*Alston & Bird, Ben F. Johnson III, Rebecca M. Lamberth*, for appellee.