**RON M. SNYDER, Plaintiff,**

v.

**TIME WARNER, INC., Defendant.**

**No. CIV.A.1:00–CV–2830–WT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 20, 2001.

---

Mike Bothwell, Gregory Mark Simpson, Office of Mike Bothwell, Roswell, GA, Timothy Harold Kratz, Richard J. Paris, Jr., McGuireWoods, Atlanta, GA, for Plaintiff.

James Andrew Lamberth, Thomas Edward Reilly, Troutman Sanders, Atlanta, GA, for Defendant.

## ORDER

THRASH, District Judge.

This is a diversity action alleging state law claims for breach of contract, fraud, promissory estoppel and negligent misrepresentation. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 15]. For the reasons set forth below, the Court grants in part and denies in part Defendant's motion.

## I. BACKGROUND

Plaintiff is a former executive of Turner Broadcasting Company ("TBS"). On or about March 1, 1997, during his employment with TBS, Plaintiff had a seizure. Soon thereafter, Plaintiff took a temporary leave of absence from TBS and, on July 1,

1997, voluntarily terminated his employment with TBS. During his employment with TBS, Plaintiff received options to purchase shares of TBS stock pursuant to written Stock Option Agreements. Plaintiff and TBS executed the four Agreements at issue in this litigation on or about December 23, 1993; May 23, 1994; January 5, 1995; and January 30, 1996. The 1993 and 1994 Agreements were entered into pursuant to the 1988 Stock Option Plan and expressly incorporated the Plan by reference. Similarly, the 1995 and 1996 Agreements were entered into pursuant to the TBS 1993 Stock Option and Equity-Based Award Plan, and also expressly incorporated the Plan by reference. Plaintiff signed each of the Agreements and received a copy of them at or about the time that he signed them. In addition, in each instance, Plaintiff expressly acknowledged receipt of a copy of the applicable Stock Option Plan and agreed to be bound by all of the terms and provisions thereof. Plaintiff admits that he reviewed the Agreements when he received them and recognized that they all had similar provisions.

Paragraph 3(a) of each of the Agreements is substantially identical and sets forth the exercise period for options granted thereunder as follows:

> The exercise period for the Option shall expire, and all rights thereunder shall terminate, on the tenth anniversary of the [date hereof], subject to earlier termination as provided in Paragraph 6 [Paragraph 5 in the 1995 and 1996 agreements] hereof and as further specified in Section 10 [Section 11 in the 1995 and 1996 agreements] of the Plan.

(Affidavit of Mark A. Waigner, Exhibits 1–4, ¶ 3(a)). The remainder of Paragraph 3 sets forth the normal vesting schedule for the options and includes provisions regarding early vesting upon the occurrence of certain conditions, including a merger of TBS. Paragraph 6 of the 1993 and 1994 Agreements and Paragraph 5 of the 1995 and 1996 Agreements address the early termination of Plaintiff's stock options upon the termination of his employment with TBS. These paragraphs are identical in each of the Agreements and state that if Plaintiff voluntarily terminates his employment with TBS:

> Optionee may exercise the Option, solely to the extent that he was entitled to do so at the date of termination of his employment, at any time or from time to time within ninety (90) days after the date of such termination of employment.

(Affidavit of Mark A. Wainger, Exhibits 1–2, ¶ 6(c), Exhibits 3–4, ¶ 5(c)).

The Stock Option Plans contain this exact provision regarding the early termination of Plaintiff's options upon the termination of his employment. These sections of the Plans also emphasize that "[t]o the extent an Option or any part thereof is not exercised within the limited period provided in … this Section …, all rights pursuant to such Option will cease and terminate at the expiration of such period." (Affidavit of Mark A. Waigner, Exhibit 5, § 10(d); Exhibit 6, § 11(e)). Both Plans also provide that "[e]xcept as otherwise provided in Section 10 of this Plan [regarding termination of employment], an Option may not be exercised in whole or in part unless the Optionee is, at the time of such exercise, an employee of the Company or a Subsidiary." (*Id.* Exhibit 5, § 7(c), Exhibit 6, § 7(c)).

The Stock Option Plans also make it clear that the company has the right to extend or increase the benefits given to an optionee under a Stock Option Agreement. For example, § 11 of the 1998 Stock Option Plan states that:

> [T]he Committee in its discretion may modify, extend, or renew outstanding

Options granted under the Plan ... Notwithstanding the foregoing however, no modification ... of an Option shall, without the consent of the Optionee, alter or impair any rights or obligations under any Option theretofore granted to such Optionee.

(Affidavit of Mark A. Waigner, Exhibit 5, § 11). Section 10 of the 1988 Plan, entitled "Death, Disability or Other Termination of Employment", also gives the company discretion to modify the terms of an option in ways favorable to the optionee. Subsection (c) sets forth the general rule that an option may be exercised within 90 days of an employee's termination. Subsection (f), however, which was added by amendment, goes on to state that:

Notwithstanding the provisions of paragraphs (a), (b) or (c) of this Section 10, the Committee, in its sole and absolute discretion, may, at the date an Option is granted or thereafter, establish different terms and conditions pertaining to the effect on that Option of the ... termination of employment of the Optionee.

(Affidavit of Mark A. Wainger, Exhibit 5, Amendment No. 2). The 1993 Plan has substantially identical provisions.

In October 1996, TBS merged with Defendant Time Warner. In connection with the merger, Plaintiff's outstanding options to purchase shares of TBS stock were treated as options to purchase shares of Time Warner stock. Pursuant to the terms of the Agreements, Plaintiff's stock options became fully vested at that time, meaning he no longer had to wait to exercise them in accordance with the Agreements' vesting schedules. Defendant contends that under the express provisions of the Stock Option Plans and Agreements, the merger had no effect on the expiration dates of Plaintiff's stock options or their early termination in connection with termination of Plaintiff's employment.

Plaintiff's voluntary termination on July 1, 1997, and the termination of Plaintiff's options on October 1, 1997, were not reflected in the Time Warner stock options computer system until September, 1998. Consequently, status reports generated from the computer system prior to September 1998 did not reflect the termination of Plaintiff's stock options on October 1, 1997. In fact, Plaintiff alleges that on August 14, 1997—less than 90 days after his termination—Time Warner sent him an official Stock Option Status Report informing him that his options did not expire until specific dates from 2003 through 2006. This report was allegedly faxed to Plaintiff at his home by the director of Time Warner's stock options department in direct response to a request for information, and was received by Plaintiff just like all other reports sent to him by Time Warner.

Also in August 1997, Time Warner sent Plaintiff a memo informing him that it had negotiated a new arrangement with Paine Webber to provide option exercise services for holders of Time Warner stock options. (Deposition of Laura Pugliese, pp. 64–66; Deposition of Ron Snyder, pp. 154–57 and Exhibit 21). This memo "strongly encouraged" Plaintiff to use PaineWebber for option services because of, among other things, "the many advantages it will provide to ... the Company." *Id.* In an accompanying guide to exercising stock options, Time Warner informed Plaintiff that "[t]he timing of your exercise is an important decision" that is affected by factors such as financial requirements, income tax considerations, and option expiration dates. This same guide informed Plaintiff that "Time Warner Stock Plans Department will send you a report showing the exercise and remaining options outstand-

ing ..." (Deposition of Ron Snyder, Exhibit 22, p. 2). Thus, Plaintiff alleges that in the document that Time Warner provided to explain how to exercise options, Time Warner vouched for the accuracy and reliability of its status reports by encouraging optionees to rely on the reports when deciding whether or not to exercise their options.

In October 1998, Plaintiff contacted PaineWebber to exercise options to purchase 500 shares of Time Warner stock. This transaction was completed despite Time Warner's current position that his stock options had expired a year earlier. In December 1998, Time Warner sent a form memorandum to Plaintiff reflecting the October 1998 transaction. Along with the form memorandum, Time Warner sent Plaintiff a status report generated by the Time Warner stock options computer system to reflect the October 1998 transaction. Defendant contends that because Plaintiff's status report was generated after his termination information had been entered into the stock options computer system, it necessarily would have shown the termination of Plaintiff's options on October 1, 1997 in accordance with the terms of the Agreements. Defendant admits, however, that it has no knowledge of what termination date was reflected in the status report. (Deposition of Maribel Torres, p. 32).

In July 1999, Plaintiff attempted to exercise options to purchase 250 shares of Time Warner stock. Time Warner did not allow Plaintiff to complete this transaction, and informed Plaintiff that all of his stock options had expired on October 1, 1997 pursuant to the terms of the Agreements. Subsequently, Plaintiff filed this lawsuit for breach of contract, fraud, promissory estoppel and negligent misrepresentation.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v, Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

Plaintiff alleges in Count I of his Complaint that Time Warner breached the Agreements by not allowing Plaintiff to exercise stock options in July 1999. (Plaintiff's Complaint, ¶ 30). Defendant contends this claim fails as a matter of law because the unambiguous terms of the controlling Agreements provide that Plaintiff's stock options terminated on October 1, 1997, 90 days after his voluntary termination of employment. Defendant emphasizes that an option contract "is peculiarly a contract of which time is of the essence." *Bowden v. Mews Dev. Corp.*, 247 Ga. 546, 277 S.E.2d 653 (1981). Therefore, according to Defendant, an experienced investor such as the Plaintiff is bound by the express terms of the agreement.

■ Plaintiff contends, however, that there has been a mutual departure from the contract terms pursuant to O.C.G.A § 13–4–4. This provision states:

Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

*Id.* This statute, which has been a part of Georgia law for a century, "sets forth a plain statutory consequence of the receipt or payment of money under a departure." *Turem v. Sinowski & Jones,* 195 Ga.App. 829, 830, 395 S.E.2d 60 (1990). Georgia courts have recognized that the mutual departure doctrine may operate to revive an agreement that has expired, where the parties continue to act as if the agreement remains valid. *See Kennesaw Guano Co. v. Edward O. Miles & Co.,* 132 Ga. 763, 770–71, 64 S.E. 1087 (1909) ("the conduct of the parties, after the expiration of the contract made in writing, was such as to renew such contract as it previously existed, and each of the parties was bound by the terms of such previously existing contract as modified by the mutual departure therefrom"). Georgia law is also well-settled that the issue of whether there has been a mutual departure is a question for the jury. *See Continental Cas. Co. v. Union Camp Corp.,* 230 Ga. 8, 11, 195 S.E.2d 417 (1973); *First Union Nat. Bank of Ga. v. Davies–Elliott, Inc.,* 215 Ga.App. 498, 504, 452 S.E.2d 132 (1994); *Cho v. South Atlanta Assoc.,* 200 Ga.App. 737, 739, 409 S.E.2d 674 (1991). Similarly, whether reasonable notice of intent to return to the contract terms has been given is also a question for the jury. *See Brackett v.* *Cartwright,* 231 Ga.App. 536, 538, 499 S.E.2d 905 (1998).

■ Defendant contends that O.C.G.A § 13–4–4 is not applicable. Specifically, Defendant asserts that there is no jury issue as to mutual departure unless there is evidence of a pattern and course of conduct of payments under terms different from those set forth in the parties' contract. *See Wright Carriage Co. v. Business Development Corp. of Ga.,* 221 Ga.App. 49, 52, 471 S.E.2d 218 (1996); *Newby v. Bank of Pinehurst,* 159 Ga.App. 890, 891, 285 S.E.2d 605 (1981). Time Warner contends that the acceptance of a payment at variance with the terms of the parties' contract on only one or two occasions is insufficient to create a jury issue under O.C.G.A § 13–4–4. *See Spooner v. Lossiah,* 185 Ga.App. 876, 876–77, 366 S.E.2d 236 (1988); *Prudential Ins. Co. of America v. Nessmith,* 174 Ga.App. 39, 39–42, 329 S.E.2d 249 (1985).

■ The mutual departure doctrine is used most in the context of repeated monthly payments of a debt. *See Adamson v. Trust Co. Bank,* 155 Ga.App. 646, 647, 271 S.E.2d 899 (1980) (determining whether there is a quasi new agreement based upon the bank's acceptance of late and irregular payments from debtor); *Wright Carriage Co.,* 221 Ga.App. at 50–52, 471 S.E.2d 218 (parties can, through course of conduct and business practice, mutually depart from strict due date of lease). Therefore, the Defendant's insistence on a constant, repeated pattern as a prerequisite for a mutual departure is understandable given the circumstances of these cases. However, nothing in the language of the statute limits the statute's applicability to payments made under a loan or lease agreement. Although the Stock Options Plan does not lend itself to an application of O.C.G.A § 13–4–4 such as presented in the aforementioned cases,

this does not foreclose a conclusion that a genuine issue of material fact exists as to the mutual departure from the terms of the Agreements contained in the present case. There is evidence that Time Warner sent Plaintiff repeated status reports reflecting his ability to exercise options far into the future. (Deposition of Ron Snyder, pp. 129–32, 152, 161). The Defendant even completed Plaintiff's request to exercise his stock options over a year after they allegedly terminated and a month after Time Warner admits its computers reflected the Plaintiff's correct termination date. (Affidavit of Maribel Torres, ¶ 8). In this regard, a jury could conclude that Defendant granted options to Plaintiff on terms other than those contained in the written contract, which equated to a mutual departure necessitating notice to return to the original contract terms.

Defendant also argues there must be some evidence that the parties had reached an agreement to depart from the terms of their contract. *Chaney v. Burdett*, 248 Ga.App. 668, 673–74, 548 S.E.2d 407 (2001). Mutual departure requires evidence that *both* parties mutually intended to depart from the terms of their original agreement. *Duncan v. Lagunas*, 253 Ga. 61, 62–63, 316 S.E.2d 747 (1984). Time Warner asserts there is no evidence that it intended, through the October 1998 transaction, to depart from the terms of the Stock Option Agreements. Instead, it argues that the only evidence is that the October 1998 transaction was permitted to occur by mistake, and that Time Warner did not thereby intend to depart from or waive the Stock Option Agreements' termination provisions. (Affidavit of Maribel Torres, ¶ 8).

However, the Court holds that there is a genuine issue of material fact as to Time Warner's intent to effectuate a mutual departure from the contract's terms. "[A]

showing [of mutual intent to change a contract] may be implied from the parties' conduct." *Shalom Farms v. Columbus Bank Co.*, 169 Ga.App. 145, 147, 312 S.E.2d 138 (1983). Plaintiff asserts the departure began within the 90–day period, when Time Warner sent Plaintiff an official Stock Option Status Report informing him that his options remained valid until specific dates in 2003 through 2006, and when it sent him a "guide" to exercising his options that urged him to rely on the status reports for information regarding his outstanding options. In January 1998, Time Warner sent Plaintiff another official status report, confirming that Plaintiff's options remained valid and outstanding for the next several years. This is especially important because at this date, Plaintiff's exercise rights under the contract had already terminated. In October 1998, Time Warner allowed Plaintiff to exercise options for 500 shares of stock. Therefore, as late as October 1998, Plaintiff had no reason to believe that his stock options had not been extended beyond the date of termination contained in the original Agreements. Even after the transaction, Time Warner took no action to advise Plaintiff that it believed his options had expired a year earlier. Rather, it was not until he attempted to exercise another set of options in July 1999, that Time Warner expressed its intention to enforce the termination provisions in the original agreements. A jury could conclude that these factual circumstances constituted the payment and receipt of money pursuant to a mutual departure, as set forth in O.C.G.A § 13–4–4, thus requiring Time Warner to give reasonable notice before attempting to return to the strict language of the agreements. *See Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 11, 195 S.E.2d 417 (1973) (whether there has been a mutual departure is a question for the jury); *Southwest Plaster, etc., Co. v. R.S.*

*Armstrong & Bros. Co.*, 166 Ga.App. 373, 374, 304 S.E.2d 500 (1983) ("whether the conduct of the parties constitutes a mutual departure from and a waiver of a contract provision ordinarily is a question of fact for the jury").

 Plaintiff also relies upon the· doctrine of waiver. Defendant argues that the parties never modified or waived provisions of the Stock Option Agreements to allow Plaintiff to exercise his options regardless of his employment status. It is well-settled under Georgia law that a party may waive contractual provisions for its benefit. *Kusuma v. Metametrix, Inc.*, 191 Ga.App. 255, 257, 381 S.E.2d 322 (1989). In *Kusuma*, the Georgia Court of Appeals stated:

> A waiver may be express, or may be inferred from actions, conduct, or a course of dealing ... Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights ... Acting on the theory that the contract is still in force, as by continuing performance, demanding or urging further performance, or permitting the other party to perform and accepting or retaining benefits under the contract, may constitute waiver of a breach

*Id.* at 257, 381 S.E.2d 322 (internal quotation marks omitted). Contractual provisions that may be waived include provisions regarding the time for performance of a contract. Specifically, the Georgia Supreme Court has held that "where time is of the essence in a contract, timely performance may be waived ... as shown by conduct before or after the closing date." *McCullough v. McCullough*, 263 Ga. 794, 795, 439 S.E.2d 486 (1994); *see also, Edwards v. McTyre*, 246 Ga. 302, 303, 271 S.E.2d 205 (1980) ("conduct either before or after the closing date may show waiver"). "[W]hether such waiver oc-

curred [is] an issue of fact for the trier of fact." *McCullough*, 263 Ga. at 795, 439 S.E.2d 486. Defendant argues that "all the attendant facts, taken together must amount to an intentional relinquishment of a known right, in order that a waiver may exist" and that waiver is a jury issue only when the evidence is conflicting. *Kusuma*, 191 Ga.App. at 257, 381 S.E.2d 322. In cases "[w]here the only evidence of an intention to waive is what a party does or forbears to do, the actions, or omissions to act relied upon must be so manifestly consistent with a waiver of a rights that no other reasonable explanation of this conduct is possible." *Rockwell Int'l Corp. v. Riddick*, 668 F.Supp. 674, 679 (N.D.Ga. 1987). Defendant contends that Plaintiff has not presented sufficient evidence to create a jury issue as to Time Warner's intention.

 The Court does not agree. Because contractual terms may be modified or waived through conduct other than verbal assent, it is of no import, as Defendant points out, that Plaintiff and Time Warner never entered into a written agreement modifying the terms of the Agreements or that they never even discussed modifying the Agreements. (Deposition of Ron Snyder, pp. 112, 198–99). Additionally, although Defendant argues that there is a reasonable explanation for its conduct under the circumstances, a fact which would negate a jury issue, the Court holds that there is at least some evidence which is inconsistent with a reasonable explanation other than a waiver. Defendant relies heavily on the fact that Plaintiff was only able to complete the exercise of his stock options in October 1998 because of a computer generated error. However, Defendant admits that the mistake had been manually corrected in the computer by September 1998. (Affidavit of Maribel Torres, ¶ 6). Still, Defendant offers no

explanation for why the correction in the computer did not prevent Plaintiff from exercising his options in October. Nor does it explain why Plaintiff was not informed immediately that no other exercise of expired options would be allowed. Accordingly, viewing the evidence and all inferences in the light most favorable to the Plaintiff, there is evidence from which a jury could conclude that Time Warner waived any requirement that Plaintiff exercise his options within 90 days of termination.

In addition to his breach of contract claim, Plaintiff asserts related claims for negligent misrepresentation and promissory estoppel, alleging that Time Warner represented to him that his stock options would remain exercisable for their full ten-year terms and that he relied on these representations to his detriment. Defendant contends that these claims fail as a matter of law because Plaintiff cannot establish the necessary elements. To prevail on a promissory estoppel claim under Georgia law, "a plaintiff must demonstrate that (1) the defendant made certain promises, (2) the defendant should have expected that the plaintiff would rely on such promises, and (3) the plaintiff did in fact rely on such promises to his detriment." *Doll v. Grand Union Co.*, 925 F.2d 1363, 1371 (11th Cir.1991); *see also Presidential Financial Corp. v. Francis A. Bonanno, Inc.*, 244 Ga.App. 430, 434, 535 S.E.2d 809 (2000). Defendant contends that Plaintiff can not establish a sufficiently definite promise to support a promissory estoppel claim. *See Foley Co. v. Warren Engineering, Inc.*, 804 F.Supp. 1540, 1545 (N.D.Ga. 1992) (holding evidence showed that manufacturer did not make an unconditional promise to provide fans to contractor at stated price so as to entitle contractor to recover under Georgia law on promissory estoppel claim).

It is clear that a promise sufficiently definite to support a promissory estoppel claim need not have been prefaced with the words "I promise". Rather, " '[a] promise is a manifestation of an intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.' " *DPLM, Ltd. v. J.H. Harvey Co.*, 241 Ga.App. 219, 221, 526 S.E.2d 409 (1999); *see also Mooney v. Mooney*, 245 Ga.App. 780, 783, 538 S.E.2d 864 (2000). In this case, the Court holds that there is evidence from which a jury could conclude that Time Warner manifested an intention to allow Plaintiff to exercise his options following the 90–day period. It sent Plaintiff official status reports, including one within the 90–day window, informing Plaintiff that his options remained outstanding and did not expire until specific dates in 2003 through 2006. The reports identified with great specificity the precise options Plaintiff had outstanding, the dates such options were granted, the number of such options, and the exact dates on which such options would expire. (Deposition of Laura Pugliese, Exhibit 14). The August 1997 report was specially printed out by the director of Time Warner's stock options department and sent to Plaintiff at his home in response to a request for information. (Deposition of Ron Snyder, p. 138). In addition, Time Warner sent Plaintiff a "guide" to exercising his stock options, which urged him to rely on the status reports. (Deposition of Ron Snyder, Exhibit 22, p. 2). Additionally, Time Warner actually processed options exercised a year after the 90–day period had expired. (Affidavit of Maribel Torres, ¶ 8). The evidence in the present case is more substantial than that put forth in *Foley* where this Court held that an enforceable promise had not been made. *Foley*, 804 F.Supp. at 1545.

There, no evidence existed that the manufacturer intended to make a firm offer. *Id.* at 1545–46. The contractor called the manufacturer out of the blue for a quote and knew that the manufacturer did not have current plans or specifications for the project. *Id.* at 1546 Also, the contractor never informed the manufacturer that its bid had been accepted. *Id.* This evidence differs markedly from Plaintiff's in the present case where every action taken by Defendant for almost a two year period led to only one conclusion -Plaintiff's stock option exercise period had been extended. The Court concludes that Plaintiff has come forward with evidence from which a jury could find that Time Warner made an enforceable promise to Plaintiff.

Defendant also contends that Plaintiff cannot establish that he reasonably relied on the alleged promise in the status reports. Promissory estoppel requires not merely reliance but reasonable, justifiable reliance. *W.R. Grace & Co. v. Taco Tico Acquisition Corp.*, 216 Ga.App. 423, 426, 454 S.E.2d 789 (1995). "Questions of reasonable reliance are usually for the jury to resolve." *Ambrose v. Sheppard*, 241 Ga.App. 835, 837, 528 S.E.2d 282 (2000); *see also Folks, Inc. v. Dobbs*, 181 Ga.App. 311, 314, 352 S.E.2d 212 (1986) (whether the promise "acted as a catalyst" to plaintiff's actions, and "whether such reliance was reasonable under the circumstances," are questions for the jury). As set forth above, in August 1997—well within the 90–day period following Plaintiff's termination -Time Warner sent Plaintiff an official Stock Option Status Report. Although Plaintiff's employment had terminated more than a month previously, the report showed that his options remained exercisable and did not expire until specified dates in 2003 through 2006. This report was not one that was automatically generated as a matter of course. Rather,

it was specially produced by the director of Time Warner's stock options department in response to a request for information and sent to Plaintiff by fax at his home. (Deposition of Laura Pugliese, pp. 63–64; Declaration of Ron Snyder, ¶ 3). Plaintiff states that, as was his practice, when he received the status report, he compared the information on the report, including the expiration dates of his options, with the information on the previous report. (Declaration of Ron Snyder, ¶¶ 3–5; Deposition of Ron Snyder, pp. 139–41). If the report had not affirmatively reflected that the options would not expire until 2003 through 2006, but had instead stated that they would expire in October 1997, Plaintiff states he would have noticed the discrepancy and would have immediately contacted the Time Warner options department. (Declaration of Ron Snyder, ¶ 5). Rather than letting his options expire, Plaintiff declares he would have executed all of his options immediately. (Declaration of Ron Snyder, ¶ 5). Additionally, the fact that Time Warner allowed Plaintiff to exercise a number of stock options in October 1998, only reinforced his reliance on Time Warner's representations that his options were exercisable beyond the termination date outlined in the original Agreements. The Court holds the evidence is sufficient to raise a jury question as to whether Plaintiff reasonably relied upon Time Warner's representations.

Defendant attacks Plaintiff's negligent misrepresentation claim for similar reasons as Plaintiff's claim under promissory estoppel. Defendant also argues that not only has Plaintiff not made out a claim for negligent misrepresentation, it is highly doubtful that a negligent misrepresentation claim is even available to Plaintiff here. *See Simpson Consulting Inc., v. Barclays Bank PLC*, 227 Ga.App. 648, 651–52, 490 S.E.2d 184 (1997) (negligent

misrepresentation claim is available "under very limited factual circumstances that would give a right of action for professional malpractice, but for the absence of 'privity' "). The Court does not believe that the standard for negligent misrepresentation is as strict as Defendant portrays. In *Robert & Co. Assocs. v. Rhodes–Haverty P'ship*, 250 Ga. 680, 300 S.E.2d 503, (1983), the Georgia Supreme Court adopted the standard set forth in the Restatement of Torts 2d, § 552 (1977) and held that:

> Under this standard, one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

*Id.* at 681–82, 300 S.E.2d 503. It cannot be doubted that the provision of information regarding the expiration date of Plaintiff's options was made during the course of Defendant's business, and concerned a transaction in which Defendant had a pecuniary interest. Since the information was provided directly to Plaintiff, it is undisputed that he is a "person[ ] for whom the information was intended." *Id.* Defendant was also aware of the uses to which the information would be put, since, among other things, it provided Plaintiff and other optionees with a guide referring them to their status reports for information regarding their outstanding options, and advised them to consider the expiration dates in planning the time for exercise. A jury could conclude that to the extent the options would otherwise expire in October 1997, it failed to exercise reasonable care and competence in representing that they would not expire until 2003 through 2006.

Although Plaintiff's Complaint also included a claim for fraud, Plaintiff has abandoned that claim. Defendant's Motion for Summary Judgment as to this claim is granted. Similarly, Plaintiff has not responded to the Defendant's claim that there is no evidence of willfulness, bad faith or stubborn litigiousness that would support the claims for punitive damages or attorneys' fees. These claims are deemed to be abandoned as well. The Defendant's Motion for Summary Judgment is granted as to these claims.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. 15] is GRANTED IN PART AND DENIED IN PART.