A05A0857. GUIDEONE LIFE INSURANCE COMPANY v. WARD.
A05A0858. WARD v. KANSAS CITY LIFE INSURANCE
COMPANY.

(619 SE2d 723)

MILLER, Judge.

Following her husband's death, Kelly Ward sued Guideone Life Insurance Company to collect benefits under a term life insurance policy (the "Policy"). In Case No. A05A0857, Guideone appeals from (i) the trial court's grant of summary judgment to Kelly Ward on her claim for Policy benefits, and (ii) the trial court's denial of Guideone's motion for summary judgment on this claim. In Case No. A05A0858, Kelly Ward appeals from the trial court's grant of summary judgment to Kansas City Life Insurance Company, as successor in interest to Guideone, on her claim for bad faith damages under OCGA § 33-4-6.[1] For the reasons set forth below, we reverse in part and affirm in part in Case No. A05A0857, and we affirm in Case No. A05A0858.

### Case No. A05A0857

Kelly Ward and Guideone filed cross-motions for summary judgment on Kelly Ward's breach of contract claim. The trial court granted

---

[1] The trial court's order appealed from in both Case No. A05A0857 and Case No. A05A0858 refers to the defendant as "Kansas City Life Insurance Company, as successor in interest to Guideone Life Insurance Company." However, the defendant was sued as "Guideone Life Insurance Company" and appeals as "Guideone Life Insurance Company" in Case No. A05A0857. We refer to the defendant as "Guideone" in both cases.

Kelly Ward's motion for summary judgment and denied Guideone's motion for summary judgment. We agree with Guideone that the trial court erred in granting Kelly Ward's motion for summary judgment as to Guideone's liability under the Policy, but we also find that the trial court properly denied Guideone's motion for summary judgment on this claim.

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553, 553-554 (562 SE2d 731) (2002).

So viewed, evidence shows that the Policy, issued on July 7, 1997, for a seven-year renewable term, insured the life of Stephen Ward, Kelly Ward's husband. Kelly Ward was the beneficiary of the policy's death proceeds of $250,000. The Policy provided for a grace period of 31 days for nonpayment of premiums, and death proceeds were payable if the insured died during the 31-day grace period. If premiums were not paid by the end of the grace period, the Policy terminated as of the premium due date.

The Policy allowed the insured to make annual, semi-annual, quarterly, or monthly premium payments, depending on the payment frequency selected on the application. The Policy initially provided for quarterly payments of $126.10, with annual premiums set at $460. The frequency of payments could be changed with Guideone's approval. While the Policy was in effect, Guideone accepted monthly, quarterly, and semi-annual premium payments by Stephen Ward.

Guideone did not receive the premium payment due on August 17, 2001. On September 13, 2001, Guideone sent Stephen Ward a "late payment offer" indicating Guideone would accept a late premium payment through approximately September 27, 2001, but conditioned upon a signature of Stephen Ward confirming he was alive.

Stephen Ward died on September 21, 2001. On September 22, 2001, Daniel Ward, Stephen Ward's son, tendered payment on the Policy by sliding the payment under the door of his father's insurance agent. Guideone refused the check and returned it to Kelly Ward.

1. Guideone contends that it was not required to give notice to Kelly Ward that it would terminate the Policy because the Policy lapsed due to nonpayment of premiums. The trial court found that due to Guideone's past performance of the Policy terms, including acceptance of late payments, notice was needed to terminate the Policy, but no notice was sent. Kelly Ward contends that Guideone

was also required to give notice of termination under OCGA § 33-24-44. We find that the trial court erred in concluding that Guideone's acceptance of late premium payments and past performance of the Policy terms gave rise to a duty by Guideone to notify Stephen Ward before terminating the Policy. We also find that Guideone was not required to give notice of Policy termination under OCGA § 33-24-44. However, as discussed in Division 2 below, remaining issues of fact as to the amount of premiums overpaid by Stephen Ward prevent the grant of summary judgment to Guideone.

(a) In reaching its conclusion that notice was needed to terminate the policy, the trial court relied on the principle of mutual departure from the terms of a contract.

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

OCGA § 13-4-4. A departure sufficient to require a notice of intent to insist on strict compliance of the original terms of the agreement under OCGA § 13-4-4 must be "mutual between the parties and intended, and must be such as, in law, to make practically a new agreement as to the stipulations contained in the original contract." *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 11 (1) (195 SE2d 417) (1973).

Although the evidence shows that Stephen Ward often paid his premiums after the due date, Guideone never accepted a late payment after the 31-day grace period unless it was accompanied by a reinstatement application or a signed "late payment offer." When Guideone received a payment after the grace period in 1998, it sent a letter to Stephen Ward informing him that the Policy had lapsed and he was required to submit an application to reinstate the Policy. Guideone accepted premiums received during the 31-day grace period without condition, but this acceptance was contemplated by the terms of the Policy and does not show a mutual departure from the contract terms.

Guideone allowed Stephen Ward to reinstate the Policy five times after he failed to pay his premiums within the 31-day grace period. The Policy expressly contemplated reinstatement if the insured showed he was insurable and paid all past due premiums with six percent interest. Consistent with this term, Stephen Ward submitted reinstatement applications in which he answered several

health- and occupation-related questions. The applications also provided that acceptance was conditioned upon approval during the applicant's lifetime. Although Guideone did not insist that Stephen Ward pay the six percent interest on past due premiums, Guideone's waiver of this provision is not evidence of Guideone's waiver of its right to insist on timely payment of premiums. See *Gulf Life Ins. Co. v. Frost*, 125 Ga. App. 63, 65 (186 SE2d 456) (1971). Because the parties did not vary from the contract terms in reinstating the Policy following nonpayment of premiums, there was no mutual departure from the contract provisions which would require Guideone to give notice of its intent to insist on the terms of the contract in reinstating the Policy. See *Prudential Ins. Co. of America v. Nessmith*, 174 Ga. App. 39, 41 (329 SE2d 249) (1985) (where insurer followed the terms of the contract in reinstating the policy on those occasions when the insured was late, this did not show a pattern of mutual disregard of the terms of the contract).

In 1998, Guideone accepted a premium payment outside the grace period pursuant to a "late payment offer" signed by Stephen Ward certifying that "all persons under this policy are now living." The offer form that Stephen Ward signed provided that "[t]his voluntary late acceptance of a premium is not to be considered a precedent." Guideone mailed a second "late payment offer" to Stephen Ward before his death in 2001, informing him that Guideone would accept a late premium payment if he signed the offer form, indicating he was alive at the time, and tendered payment to Guideone. While Guideone may have been obligated to accept a late premium payment if it had been accompanied by the signed offer form, there is no evidence Stephen Ward ever signed the offer, which was not included in the late payment tendered after his death. Evidence that Guideone was willing to accept two late payments, conditioned on Stephen Ward's signature on an offer form, does not establish a new understanding between the parties that Guideone would accept late premium payments without such condition.

In view of the evidence, we conclude that, as a matter of law, the parties did not reach a "practically new agreement" in accepting late premium payments such that Guideone was required to notify Stephen Ward that it would insist upon the original Policy terms with regard to such payments. The trial court therefore erred both in granting summary judgment to Kelly Ward due to Guideone's failure to provide such notice, and in not granting summary judgment to Guideone on the issue.

(b) Kelly Ward contends that, notwithstanding the other grounds for the trial court's ruling, OCGA § 33-24-44 required Guideone to notify Stephen Ward before it could terminate the Policy. We disagree.

OCGA § 33-24-44 requires the insurer to notify the insured of the cancellation of insurance policies which may under their terms and conditions be cancelled by the insurer, and to return unearned premiums to the insured. However, the notification requirements of OCGA § 33-24-44 do not apply where the policy provides for its expiration for failure to pay the premium within the grace period. See *Tippins Bank & Trust Co. v. Southern Gen. Ins. Co.*, 266 Ga. 97, 99 (464 SE2d 381) (1995) (acknowledging "statutory scheme to limit required notice to those instances in which coverage is ended because of the insurer's unwillingness or refusal to renew rather [than] the insured's own failure to act"). See also *Goodley v. Fireman's Fund &c. Ins. Co.*, 173 Ga. App. 277, 278 (1) (326 SE2d 7) (1985) (statute does not apply to the expiration or lapse of an insurance contract due to failure to pay premium). Although, as discussed in Division 2 below, Stephen Ward overpaid his premiums during the course of the Policy term, OCGA § 33-24-44 does not invalidate policy termination on the grounds of the insurer's failure to return unearned premiums. See OCGA § 33-24-44 (c) (3).

2. Guideone further contends that the trial court erred in granting summary judgment to Kelly Ward for benefits under the insurance policy and in denying its motion for summary judgment. We agree that the trial court erred in granting summary judgment to Kelly Ward. However, we conclude that a jury must decide the issues of fact remaining as to whether the Policy was in force at the time of Stephen Ward's death in light of his overpayment of the Policy premiums.

Both parties agree that Stephen Ward overpaid his premiums during the lifetime of the Policy. Guideone contends that it accepted $20.10 of premium overpayments while the Policy was in effect. Kelly Ward contends that her husband overpaid his premiums by either $62.10 or $74.25. Since the issue remains in dispute, and since the parties fail to explain their differing interpretations of the record, we conclude that the actual amount of overpayments remains a question for the trier of fact.

The smallest premium payments contemplated by the Policy are monthly payments, and evidence shows that Guideone had willingly accepted monthly premium payments of $40.76 from Stephen Ward. When Stephen Ward overpaid the Policy by submitting checks for amounts greater than the premium due, Guideone accepted this extra money on the basis that it constituted premium payments, and never returned it. If a trier of fact concludes that these additional payments were greater than $40.76, then Stephen Ward paid an additional monthly premium under the terms of the Policy. In such case, Stephen Ward's death occurred during the 31-day grace period

for which the Policy provided coverage. Therefore, the trial court correctly denied Guideone's motion for summary judgment on this issue.

Kelly Ward argues that in light of Guideone's admission that it retained $20.10 in premium overpayments, these payments must be credited toward additional insurance coverage, and that evidence of such payments demands a finding that Stephen Ward was insured when he died. We disagree.

We have previously held that "[w]ithout an agreement to the contrary, the partial payment of a life-insurance premium when not within the contemplation of the policy is not effective to keep the policy in force, unless the insurer, when receiving such partial payment, does something in that connection which operates as a waiver of full and timely payment." (Citations omitted.) *Metro. Life Ins. Co. v. Smith*, 48 Ga. App. 245 (172 SE 654) (1934). This statement is consistent with the general principles of contract law and remains sound today. *Sapp v. State Farm Fire &c. Co.*, 226 Ga. App. 200, 201 (1) (a) (486 SE2d 71) (1997) (if the policy language is unambiguous, the court will enforce insurance contract as written). The Policy does not provide for partial premium payments, and $20.10 is less than any discrete premium installment contemplated by the Policy. Since the evidence does not demand a finding that Guideone waived the necessity of receiving full premium payments, Kelly Ward was not entitled to summary judgment by reason of Guideone's acceptance of overpayments over the life of the Policy amounting to less than any single premium payment.

We have also considered Kelly Ward's contention that the Policy reinstatements were effective as of the date of the reinstatements, and that Stephen Ward paid for several months of coverage for which he received no benefit unless the coverage period was extended. However, the evidence shows that the parties intended Policy reinstatements to revive the Policy as if it had not lapsed, with the premium payments submitted with the reinstatement applications applied retroactively to the date when premiums were overdue. See, e.g., *Dunn v. Royal Maccabees Life Ins. Co.*, 242 Ga. App. 903, 906 (1) (531 SE2d 761) (2000) (effect of reinstatement is not to make a new policy, but to wipe out the default as if it had never occurred, renewing the policy from the date of lapse or default). Accordingly, Kelly Ward was not entitled to summary judgment on the grounds that Policy reinstatements extended coverage only from the date of reinstatement. In view of our findings here and in Division 1, finally, the trial court erred in granting summary judgment to Kelly Ward on the issue of Guideone's liability under the Policy.

*Case No. A05A0858*

3. In her cross-appeal, Kelly Ward contends that the trial court erred in granting summary judgment to Guideone on her claim for bad faith damages under OCGA § 33-4-6. We disagree.

Kelly Ward argues that the trial court erred in granting summary judgment to Guideone on her bad faith claim because the trial court acted sua sponte. However, the trial court may grant summary judgment sua sponte to the nonmoving party so long as the grant is proper in all other respects. *Generali-U. S. Branch v. Southeastern Security Ins. Co.*, 229 Ga. App. 277, 278 (1) (493 SE2d 731) (1997). This means that in addition to ensuring that the record supports the ruling, the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond before summary judgment is entered. *Builder Marts of America v. Gilbert*, 257 Ga. App. 763, 766 (2) (572 SE2d 88) (2002). Kelly Ward had an opportunity to be heard after she moved for summary judgment on the issue of Guideone's bad faith and was aware of Guideone's response that no bad faith claim could stand. See *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 29-30 (4) (537 SE2d 165) (2000).

OCGA § 33-4-6 provides for damages of up to 50 percent of the insurer's liability and payment of reasonable attorney fees "[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith." The question of bad faith is for the jury unless it can be said that as a matter of law the insurer had a reasonable defense which showed its good faith in denying coverage. See *St. Paul Fire &c. Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (2) (358 SE2d 925) (1987).

Stephen Ward failed to pay his premium on its due date and died outside the grace period, and Guideone therefore had a reasonable basis under the terms of the Policy for refusing to pay death benefits. Moreover, the premium overpayments are also a matter of good faith dispute. Guideone therefore did not demonstrate bad faith in failing to pay the Policy benefits. "Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." (Citations and punctuation omitted.) *Southern Fire &c. Ins. Co. v. Northwest Ga. Bank*, 209 Ga. App. 867, 867-868 (434 SE2d 729) (1993).

Kelly Ward points to the affidavit of Tim Ryles, former commissioner of insurance for the State of Georgia, as evidence of bad faith. Opinion evidence may be sufficient to preclude the grant of summary judgment. See *Gilbert v. Automotive Purchasing Svc.*, 254 Ga. App. 770, 772 (563 SE2d 906) (2002). Ryles states that in denying death

benefits Guideone breached "standards of good faith and fair dealing, and [fell] short of satisfying fair claims settlement standards." However, Ryles reached this conclusion only by presupposing the condition that "[i]f failing to give a balanced review of the evidence, Guideone places its economic interests above those of the insured," then Guideone had acted in bad faith. Viewed as a whole, Ryles' statement is not sufficient evidence of Guideone's bad faith in contesting Kelly Ward's claim. " 'Ultimate or conclusory facts and conclusions of law, as well as statements made on belief or "on information and belief," cannot be utilized on a summary judgment motion.' " (Citation omitted.) *Dickson v. Dickson*, 238 Ga. 672, 674 (4) (235 SE2d 479) (1977). Accordingly, the trial court did not err in granting summary judgment to Guideone on Kelly Ward's claim for bad faith damages.

*Judgment affirmed in part and reversed in part in Case No. A05A0857. Judgment affirmed in Case No. A05A0858. Blackburn, P. J., and Bernes, J., concur.*

DECIDED AUGUST 8, 2005.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, John C. Bonnie, Howard J. Russell*, for Guideone Life Insurance Company and Kansas City Life Insurance Company.
*Johnson & Benjamin, Jonathan W. Johnson*, for Ward.