A08A0174. ZILKA et al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
(662 SE2d 777)

MILLER, Judge.

Dina and Paul Zilka sued State Farm Mutual Automobile Insurance Company ("State Farm")[1] and Bill Rhinehart Insurance Agency, Inc. ("Rhinehart") asserting breach of contract and bad faith claims arising out of State Farm's refusal to pay the Zilkas' claims under two State Farm automobile insurance policies. The trial court granted State Farm and Rhinehart's motion for summary judgment, and the Zilkas appeal.[2] We affirm for the reasons set forth below.

On appeal from a grant of a motion for summary judgment, we review the evidence de novo in the light most favorable to the nonmovant to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998). So viewed, the evidence shows that State Farm issued an automobile insurance policy to Dina Zilka on her Toyota Camry, which she co-owned with her husband, Paul Zilka. State Farm also issued a separate insurance policy to Paul Zilka on his Dodge Ram truck.

Dina Zilka was required to make premium payments to State Farm every six months. State Farm sent her a bill on September 5, 2000, requesting that she pay her policy premium by October 9, 2000. She failed to pay the premium by the due date.

State Farm's operation manager, Larry Erickson, averred that as a consequence of Dina Zilka's failure to pay, State Farm sent her a policy cancellation notice on October 19, 2000. Attached to Erickson's affidavit is a copy of the notice as well as a certificate prepared

---

[1] State Farm was sued as "State Farm Insurance Mutual Automobile Insurance Co., Inc." and so named in the summary judgment order and the subsequent notice of appeal. State Farm has consistently shown, and the Zilkas do not deny, that its correct name is "State Farm Mutual Automobile Insurance Company."

[2] State Farm and Rhinehart's motion to dismiss this appeal on the grounds that the Zilkas filed an untimely appellate brief is denied.

by State Farm as part of its routine business practices, date stamped by the United States Postal Service, indicating that a nonpayment cancellation notice was mailed to Dina Zilka on October 19, 2000. According to the notice, the policy would be cancelled due to nonpayment effective November 1, 2000, but that payment of the amount due prior to the cancellation date would reinstate the policy. The notice further provided that, if payment was made after the cancellation date, "you will be informed whether your policy has been reinstated and if so, the exact date and time of reinstatement. *There is no coverage between the date and time of cancellation and the date and time of reinstatement.*" (Emphasis supplied.) The Zilkas did not remember seeing the cancellation notice, although Dina Zilka admitted that "[i]t doesn't mean I didn't receive it," and Paul Zilka deposed that "I wouldn't deny [receiving] it."

Paul Zilka mailed the policy premium to State Farm agent Bill Rhinehart on November 6, 2000. Dina Zilka was involved in a collision on November 7, 2000, while driving the Toyota. That same day, she and her husband went to Rhinehart's office to report the accident and ask if there would be a problem with coverage. Rhinehart indicated that since the premium check was in the mail that he did not foresee any problems. The Zilkas were not, however, aware that the cancellation notice had been sent, so they did not inform Rhinehart of that fact.

Dina Zilka later made a policy claim for reimbursement of $4,500 in property damages arising out of the November 7, 2000 accident. State Farm denied the claim on the grounds that the policy was not in force from November 1, 2000, until November 8, 2000, when State Farm received the premium payment and reinstated the policy. Paul Zilka also filed a claim under his own policy with State Farm on the grounds that his wife was an uninsured motorist. State Farm also denied this claim. According to the Zilkas, they had previously paid the State Farm policy premiums late on their respective policies on several occasions, and that State Farm had accepted the late payments.

1. The Zilkas contend that the trial court erred in granting summary judgment to State Farm and Rhinehart because they had "failed to conclusively establish [an] absence or nonexistence of any defense." However, as the defendants, State Farm and Rhinehart may establish that there is no genuine issue of material fact

> by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential

element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

(Citation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Accordingly, we find no merit to this argument.

2. The Zilkas further maintain that the trial court erred in granting summary judgment to State Farm and Rhinehart because there remained an issue of material fact as to whether Dina Zilka's insurance coverage had been effectively cancelled and not reinstated at the time of the loss. We disagree.

Pursuant to OCGA § 33-24-44 (d), a policy may be cancelled for nonpayment of premiums "by delivering or mailing written notice to the named insured . . . at least ten days prior to the effective date of cancellation. . . ." Dina Zilka failed to pay her premiums when due, and State Farm mailed a notice of cancellation to her on October 19, 2000, more than ten days prior to the November 1, 2000 cancellation date. The address to which the notice was mailed is indicated on the certificate of mailing, and the Zilkas do not maintain that the address was incorrect. Although the Zilkas do not recall seeing the notice of cancellation, they do not deny its receipt. Furthermore, "[i]n order to prove cancellation of the policy it was unnecessary . . . to prove that the insured actually received the written notice, where it is undisputed that the notice was mailed to the address of the insured as stated in the policy." (Citation and punctuation omitted.) *Harris v. United States Fidelity & Guaranty Co.*, 134 Ga. App. 739, 744 (3) (216 SE2d 127) (1975).

While the Zilkas cite *Garner v. Govt. Employees Ins. Co.*, 129 Ga. App. 235, 236-237 (2) (199 SE2d 350) (1973) (physical precedent only), *Garner* held that an insurer may not fail to *renew* certain insurance policies without providing proper notice. Id. Here, the policy was cancelled, not "non-renewed." Moreover, the policy provides State Farm with the right to "cancel or non-renew this policy" if the insured fails to timely pay the premiums.

State Farm reinstated the policy upon its receipt of the premium payment on November 8, 2000, but nothing in the policy required that the reinstatement be retroactive to the date of cancellation, and the notice of cancellation specifically provided that there would be no coverage between the date of cancellation and the date of any reinstatement. See *State Farm &c. Ins. Co. v. Moore*, 104 Ga. App. 194, 195 (121 SE2d 286) (1961) (lapsed policy was not in force on date of loss where nothing in the policy or in the conduct of the parties indicated an intention that the reinstatement of the policy should be retroactive). Accordingly, State Farm and Rhinehart have demonstrated that there remains no issue of material fact as to

whether the policy issued to Dina Zilka had been effectively cancelled when the loss occurred on November 7, 2000.

3. The Zilkas also claim that the trial court erred in granting summary judgment to State Farm because there is an issue of material fact raised by State Farm's practice of accepting late premium payments. We disagree.

OCGA § 13-4-4 provides:

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

> Though a quasi new agreement arises where the parties mutually depart from the terms of the original agreement and pay or receive money under such departure, there must be more than a simple breach on the part of one of the parties; there must be a mutual departure.

(Citations and punctuation omitted.) *Prudential Ins. Co. &c. v. Nessmith*, 174 Ga. App. 39, 40 (329 SE2d 249) (1985).

The evidence shows that between 1994 and 2000, Dina Zilka sent in her premium payment late at least three times. According to Dina Zilka, State Farm never sent her a reimbursement check for any lapsed period of time that the policy was not in effect, and that "each time that I sent my premium late to [State Farm] they retroactively reinstated my automobile insurance policy." Dina Zilka does not show, however, that State Farm ever reinstated the policy after it had sent a notice of cancellation, as is this case here, or that any reinstatement following cancellation was without interruption of coverage. Thus, there is no evidence that the parties departed from the terms of the contract insofar as cancellation and reinstatement such that State Farm was required to give prior notice of its intent to adhere to the policy terms. See generally *Guideone Life Ins. Co. v. Ward*, 275 Ga. App. 1, 4 (1) (a) (619 SE2d 723) (2005) (acceptance of late payments did not depart from terms so as to reach "practically new agreement"); *Nessmith*, supra, 174 Ga. App. at 40 (one or few separate instances of insurer's acceptance of over-due premium payment does not show insurer's waiver of forfeiture claim for late payment of subsequent premium).

Furthermore, even if the parties had mutually departed from the terms of the policy, State Farm provided Dina Zilka advance written

notice of its intent to expressly rely on the policy terms based upon her failure to timely pay the insurance premiums in this instance; specifically, that the policy would be cancelled effective November 1, 2000, and that any reinstatement would not provide coverage between the date of cancellation and the date of reinstatement. Accordingly, we find that the terms of the policy were not suspended by reason of OCGA § 13-4-4.

4. Lastly, the Zilkas contend that the trial court erred in granting summary judgment to State Farm because Dina Zilka and Paul Zilka could recover for the loss to their jointly owned Toyota under the uninsured motorist provisions of Paul Zilka's State Farm insurance policy. We find no merit to this argument.

Paul Zilka's policy provided that State Farm "will pay damages . . . an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." However, Paul Zilka's policy also provided that an "uninsured motor vehicle" does not include a motor vehicle "furnished for the regular use of you, your spouse or any relative." The Zilkas do not contend that an uninsured vehicle, other than the Toyota, was involved in the accident, nor do they argue that for purposes of the policy that the Toyota was not a vehicle furnished for Dina Zilka's regular use. The Zilkas neverthe-less contend that the provision excluding those vehicles "furnished for the regular use of you, your spouse or any relative" from the definition of uninsured motor vehicles is in violation of OCGA § 33-7-11 and inconsistent with *Doe v. Rampley*, 256 Ga. 575 (351 SE2d 205) (1987) and *White v. Metro. &c. Ins. Co.*, 266 Ga. 371 (467 SE2d 333) (1996). We disagree.

The policy's definition of uninsured motor vehicle mirrors the language of OCGA § 33-7-11 (b) (1) (D), which provides that " 'Un-insured motor vehicle' means a motor vehicle, other than a motor vehicle owned by or *furnished for the regular use of . . . the spouse of the named insured. . . .*" (Emphasis supplied.) The policy complies with OCGA § 33-7-11 (a) (1) because State Farm agreed to provide uninsured motorist coverage within the statutory limits. The policy complies with OCGA § 33-7-11 (b) (1) (B) because Dina Zilka is included as an insured as the spouse of Paul Zilka. *Doe* and *White* are not factually analogous because they involved claims in which the insured was involved in a collision with an uninsured third party. See *Doe*, supra, 256 Ga. at 576 (insured operated truck furnished for his regular use by his employer and was involved in a collision with unidentified motorist who negligently drove his vehicle into the insured's path); *White*, supra, 266 Ga. at 371 (relative of named insured was driving her own vehicle when she was in collision with uninsured motorist).

In this case, it is the vehicle co-owned by the Zilkas that is alleged to be the only uninsured motor vehicle involved in the accident. "The only requirement for recovery under the uninsured motorist statute is that an individual is an 'insured who is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle.'" (Citation omitted.) *White*, supra, 266 Ga. at 373. Pretermitting whether either of the Zilkas might otherwise be entitled to recover for the loss to the Toyota, no "uninsured motor vehicle" for purposes of the policy was involved in the accident. It follows that State Farm was entitled to deny the Zilkas' claims for uninsured motorist coverage under Paul Zilka's policy.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MAY 23, 2008.

*Paul P. Zilka, James F. Steckbauer*, for appellants.

*Swift, Currie, McGhee & Hiers, John W. Campbell, Valerie E. Pinkett*, for appellees.