**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2018**

# In the Court of Appeals of Georgia

A17A1596. HAZELWOOD v. AUTO-OWNERS INSURANCE DO-061 COMPANY.

DOYLE, Presiding Judge.

After becoming injured while attempting to inflate a tire on his employer's truck, Joey Hazelwood pursued an underinsured/uninsured[1] motorist ("UM") claim against his automobile insurance carrier, Auto-Owners Insurance Company.[2] Following the grant of summary judgment to Auto-Owners, Hazelwood appeals, contending that the trial court erred by ruling that he was not entitled to coverage

---

[1] "If the motorist is uninsured or underinsured, the statutory characterization is that of 'uninsured.'" *FCCI Ins. Co. v. McLendon Enterprises*, 297 Ga. 136, 137 n.2 (772 SE2d 651) (2015), citing OCGA § 33-7-11 (b) (1) (D) (ii).

[2] According to the appellee's brief, Auto-Owners Insurance Company is a misnomer for the insurer, Owners Insurance Company. Both parties have continued to refer to the insurer in pleadings and briefs as Auto-Owners Insurance Company, so we use that name for purposes of this appeal.

because he was injured by a vehicle furnished for his regular use. Finding no error, we affirm.

"On appeal from a grant of a motion for summary judgment, we review the evidence de novo in the light most favorable to the nonmovant to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law."[3]

The relevant facts in this case are undisputed. Hazelwood was employed by Michael Rose d/b/a/ Rose Logging (collectively "Rose") and regularly drove a large logging truck owned by Rose and used in Rose's business. Hazelwood drove the truck five days per week, and although he typically returned it at the end of his shift, he was not required to return the truck to Rose at any particular time, and he had kept it overnight at least twice. Late one afternoon, as Hazelwood was on duty driving the truck from a logging site to a wood yard, two of the truck's tires blew out. Hazelwood pulled over on the side of a two-lane mountain road and contacted Rose, who arrived with a replacement tire to allow them to slowly drive the truck to a safer area to properly fix both tires. After the tire was mounted on the wheel, Rose partially

---

[3] *Zilka v. State Farm Mut. Automobile Ins. Co.*, 291 Ga. App. 665 (662 SE2d 777) (2008).

inflated it and turned it over to Hazelwood to continue the inflation. Hazelwood resumed the inflation, and the tire blew off the wheel, striking Hazelwood and causing him injuries.

Rose was covered by an automobile insurance policy, and Hazelwood was paid the $100,000 policy limit by Rose's insurance carrier. Because Hazelwood's damages exceeded that amount, he sued Rose and served Auto-Owners, his own insurance provider, so he could pursue a UM claim under his policy.[4] Auto-Owners answered and moved for summary judgment on the grounds that the truck at issue was not an "uninsured motor vehicle" and Hazelwood failed to comply with his policy's notice requirement. Following a hearing, the trial court ruled that a fact question remains on the issue of notice, but the court granted summary judgment on the ground that the truck was not an "uninsured motor vehicle" as that term is defined in the policy and under applicable law. Hazelwood now appeals.

---

[4] See generally OCGA § 33-7-11 (d) ("In cases where the owner or operator of any vehicle causing injury or damages is known, and either or both are named as defendants in any action for such injury or damages, and a reasonable belief exists that the vehicle is an uninsured motor vehicle . . . , a copy of the action and all pleadings thereto shall be served as prescribed by law upon the insurance company issuing the policy as though the insurance company were actually named as a party defendant.").

Hazelwood's insurance policy obligates Auto-Owners to pay Hazelwood certain damages that he is otherwise legally entitled to recover from the owner of an "uninsured automobile." Based on this, Hazelwood seeks recovery of the damages he alleges are due from Rose in excess of Rose's coverage limits.[5] Hazelwood's policy excludes from the definition of an uninsured automobile vehicles that are "furnished to or available for regular use of [Hazelwood] . . . ." Hazelwood argues that this exclusion violates the statutory requirement for Auto-Owners to provide UM coverage under OCGA § 33-7-11 (a).[6] In light of the nature of the truck at issue in this case, this argument fails.

OCGA § 33-7-11 (a) provides:

No automobile liability policy . . . shall be issued or delivered in this state to the owner of such vehicle . . . unless it contains an endorsement

---

[5] See generally OCGA § 33-7-11 (b) (1) (D) (ii) (I) ("*The insured's uninsured motorist coverage* shall not be used to duplicate payments made under any available bodily injury liability insurance and property damage liability insurance coverages but instead *shall be available as additional insurance coverage in excess of any available bodily injury liability insurance and property damage liability insurance coverages* . . . .") (emphasis supplied).

[6] See generally *Wagner v. Nationwide Mut. Fire Ins. Co.*, 288 Ga. App. 132, 133 (653 SE2d 526) (2007) (collecting cases) ("The case law is replete with examples of invalid exclusions struck down because they conflict with the remedial purpose of UM coverage.").

4

or provisions undertaking to pay the insured damages . . . of an insured under the named insured's policy *sustained from the owner or operator of an uninsured motor vehicle*, within [certain specified] limits. . . .[7]

OCGA § 33-7-11 (b) (1) (D) defines the term "uninsured motor vehicle" as "a motor vehicle, *other than a motor vehicle owned by or furnished for the regular use of the named insured* . . . as to which there is [inadequate coverage]."[8] Thus, for a vehicle to be considered an uninsured motor vehicle, it must be a vehicle other than one "furnished for the regular use of the named insured," in this case, Hazelwood.

Here, the undisputed facts show that the truck that injured Hazelwood (and that is owned by Rose, the defendant in this case) was one that was furnished to Hazelwood by his employer for his regular use. This is "[t]he most typical situation"[9] in which a vehicle is furnished to an insured, and nothing in the statutory language excludes work uses such as the one here. Therefore, based on the unambiguous

---

[7] (Emphasis supplied.)

[8] (Emphasis supplied.)

[9] *Doe v. Rampley*, 256 Ga. 575, 576 (1) (351 SE2d 205) (1987).

5

statutory definition of "uninsured motor vehicle," the truck that injured Hazelwood

cannot be considered an uninsured motor vehicle under OCGA § 33-7-11.[10]

Hazelwood argues that this conclusion conflicts with prior case law enforcing

the minimum coverage provision in OCGA § 33-7-11. Specifically, he cites *Doe v.*

*Rampley*[11] and *White v. Metro Property & Cas. Ins. Co.*[12] But those cases do not

address the present scenario because the uninsured vehicle causing injury in those

cases was a separate vehicle not furnished to the insured for his or her regular use.[13]

As stated in *Rampley*, the focus of the UM coverage is on the "vehicle which is

---

[10] See generally *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 78-79 (2) (a) (779 SE2d 334) (2015) ("[W]e must presume that the General Assembly meant what it said and said what it meant. . . . [I]f the statutory text is 'clear and unambiguous,' we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.") (citation and punctuation omitted).

[11] 256 Ga. at 575.

[12] 266 Ga. 371 (476 SE2d 333) (1996).

[13] See *White*, 266 Ga. at 372 ("Jeri White filed suit against William Stephens for personal injuries suffered in a collision between automobiles. Since Stephens was an uninsured motorist, White, who was driving her own automobile when the collision occurred, sought uninsured motorist coverage . . . ."); *Rampley*, 256 Ga. at 576 ("[Rampley] named John Doe the defendant and alleged her husband's death was caused by an unknown motorist [with insufficient insurance] who negligently drove his vehicle into the path of a truck driven by her husband.").

alleged to have been uninsured,"[14] and in neither of those cases was the uninsured vehicle furnished to the insured for regular use. Notably, *Rampley* expressly declined to address the scenario where the uninsured vehicle was provided for the insured's regular use.[15] Therefore, neither *Rampley* nor *White* controls our holding in this case.

This distinction was pointed out by our Court in *Zilka v. State Farm Mut. Automobile Ins. Co.*[16] In *Zilka*, the insured was driving her own vehicle when she was involved in a collision. A dispute arose as to whether the policy had been cancelled for lack of payment. After the insurer was granted summary judgment as to lack of coverage, the insured argued that she could still seek coverage under the UM provisions because her vehicle was uninsured. This Court rejected that argument, noting that "it is the vehicle co-owned by the Zilkas that is alleged to be the only uninsured motor vehicle involved in the accident."[17] Therefore, because the UM provision only provides for recovery from the owner or operator of an uninsured vehicle, and their vehicle did not qualify because it was owned by the insured, the

---

[14] *Rampley*, 265 Ga. at 577 (2).

[15] See *Rampley*, 256 Ga. at 577 (2).

[16] 291 Ga. App. at 665.

[17] Id. at 670 (4).

7

Court affirmed the grant of summary judgment to the insurer. In so doing, the Court distinguished *Doe* and *White* "because they involved claims in which the insured was involved in a collision with an uninsured third party."[18] The same distinction applies here.

In sum, because the uninsured vehicle in this case was furnished to the insured for his regular use, it does not meet the definition of an uninsured motor vehicle under OCGA § 33-7-11 (b) (1) (D). Accordingly, the trial court correctly ruled that Hazelwood was not entitled to UM coverage under his policy.

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*

---

[18] *Id.*