**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 30, 2021**

# In the Court of Appeals of Georgia

A21A0474.  AUTO-OWNERS  INSURANCE  COMPANY  v. PARKER.

BARNES, Presiding Judge.

Savannah Parker was the passenger in a truck driven by her father, Tyler Parker, when Tyler lost control of the truck and crashed it, resulting in Tyler's death and injury to Savannah.[1] Following the single-vehicle accident, Savannah, through her appointed guardian ad litem, filed a personal injury action against Tyler's estate and served Auto-Owners Insurance Company as the purported uninsured motorist ("UM") carrier. The trial court thereafter granted Savannah's motion for partial summary judgment and denied Auto-Owners's cross-motion for summary judgment, concluding that Savannah was entitled to UM benefits from Auto-Owners. Because

---

[1] For ease of reference, we will refer to the Parkers by their first names.

Tyler's truck did not meet the definition of an uninsured automobile under the plain and unambiguous terms of the Auto-Owners's policy or under Georgia's UM statute, we reverse.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Sanderson Farms v. Atkins*, 310 Ga. App. 423, 423 (713 SE2d 483) (2011). "Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court." *Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412, 413 (1) (532 SE2d 122) (2000). Guided by these principles, we turn to the record in this case.

The record reflects that on the date of the aforementioned accident, the 2017 Ford 150 truck driven by Tyler was jointly owned by him and his wife. The truck was insured by Auto-Owners under a policy that included liability coverage and UM coverage (the "Policy"). More specifically, the Policy provided liability coverage for bodily injury with a limit of $100,000 for each person and separate "add on" UM

2

coverage with a limit of $100,000 for each person. The declarations pages of the Policy listed Tyler as the first named insured.

Counsel for Savannah demanded payment for her injuries under both the liability and UM provisions of the Policy. Auto-Owners agreed that liability coverage was available for Savannah's bodily injury claim and tendered the policy limits of $100,000. However, Auto-Owners denied coverage under the Policy's UM provision, asserting that the provision did not apply because the truck was owned by and furnished for the regular use of a named insured, Tyler, and thus did not meet the definition of an uninsured automobile under the Policy or Georgia's UM statute, OCGA § 33-7-11 (the "UM Statute").

On the cross-motions for summary judgment filed by Savannah and Auto-Owners on the issue of UM coverage, the trial court ruled in favor of Savannah, concluding that UM benefits were available to her under the Policy and the UM Statute. This appeal by Auto-Owners followed.

Auto-Owners contends that the trial court erred in concluding that Savannah was entitled to UM coverage under the Policy because Tyler's truck did not meet the definition of an uninsured automobile under either the plain terms of the Policy or Georgia's UM statute, OCGA § 33-7-11 (b) (1) (D). According to Auto-Owners, the

3

trial court erroneously concluded that the truck could be both an insured automobile and an uninsured automobile under the same insurance policy, which was inconsistent with the Policy, the UM Statute, and our precedent. We agree with Auto-Owners.

We begin by noting that "courts must employ the standard rules of contract construction to determine the meaning of the provisions of an insurance policy." (Citation and punctuation omitted.) *Jones v. Federated Mut. Ins. Co.*, 346 Ga. App. 237, 239 (1) (816 SE2d 105) (2018). To that end, "[w]e construe every insurance contract according to the entirety of its terms. When the language of a policy is unambiguous and capable of but one reasonable construction, we enforce the contract as written." (Footnotes omitted.) *Crafter v. State Farm Ins. Co.*, 251 Ga. App. 642, 644 (554 SE2d 571) (2001). We apply these rules of construction to UM policy provisions, unless there is a conflict between the provision and the clear intent of the UM Statute, in which case the provision is unenforceable and the UM Statute controls. *Dees v. Logan*, 282 Ga. 815, 816 (653 SE2d 735) (2007).

Here, the UM provision of the Policy expressly states that an "[u]ninsured automobile does not include an automobile[ ] owned or leased by, furnished to or available for regular use of *you* or any relative." (Emphasis supplied.) The Policy further provides in part that "[y]ou or your means the first named insured shown in

4

the Declarations." Taken together, these provisions make clear that an uninsured automobile does not include an automobile owned or leased by, furnished to or available for regular use of the first named insured under the Policy.

As previously noted, Tyler was the first named insured shown in the Policy's declarations, and the uncontroverted evidence reflects that the Ford F150 truck, the only vehicle involved in the accident, was owned by Tyler and furnished for his regular use. Hence, based on the plain and unambiguous language of the Policy, Tyler's truck could not serve as the uninsured vehicle for purposes of triggering entitlement to UM benefits. Indeed, given that Auto-Owners already tendered to Savannah the limits of its liability coverage under the Policy, "[t]o allow [her] to recover uninsured motorist benefits under the same policy would be to permit a double recovery." *Crafter*, 251 Ga. App. at 644. The trial court therefore erred in concluding that the Policy's UM coverage was available to Savannah. See *Smith v. Nationwide Mut. Ins. Co.*, 258 Ga. App. 570, 571-572 (1) (574 SE2d 627) (2002) (concluding that because "it is uncontested that [the insured] owned the vehicle involved in the accident and that the vehicle was insured at the time of the accident, the vehicle was not an 'uninsured motor vehicle' under [the insured's] policy"); *Crafter*, 251 Ga. App. at 644 (concluding that "under the express language of the [the

5

insured's] policy, [the insured's] vehicle could not serve as the uninsured vehicle for the purpose of triggering entitlement to [the insured's] uninsured motorist benefits"). Accord *Zilka v. State Farm Mut. Auto. Ins. Co.*, 291 Ga. App. 665, 669-670 (4) (662 SE2d 777) (2008) (concluding vehicle furnished for regular use of insured's spouse did not constitute "uninsured motor vehicle" under the insured's policy).

In concluding otherwise, the trial court reasoned that because Savannah was a minor at the time of the accident, the truck was not owned by or furnished for *her* regular use, as she was too young to operate it, and thus the truck was not excluded from the Policy's definition of an "uninsured automobile" under the circumstances of this case. However, the trial court's focus on Savannah's relationship to the vehicle was misplaced. As noted above, the Policy clearly provided that an automobile owned or furnished for the regular use of the *first named insured*, i.e., Tyler, was excluded from the definition of an "uninsured automobile," irrespective of the relationship any other claimant or party might have to the vehicle.

The trial court also concluded that Savannah was entitled to UM benefits under Georgia's UM Statute, but the plain language of that statute does not support the court's conclusion. Rather, similar to the language of the Policy, OCGA § 33-7-11 (b) (1) (D) provides in part that an "'[u]ninsured motor vehicle' means a motor

6

vehicle, other than a motor vehicle owned by or furnished for the regular use of the named insured[.]" Consequently, given that the truck was owned by and furnished for the regular use of Tyler, the named insured, the truck was excluded from the statutory definition of an "uninsured motor vehicle."[2] See *Clabo v. Tennessee Farmers Mut. Ins. Co.*, 202 Ga. App. 110, 112 (413 SE2d 476) (1991), overruled in part on other grounds by *Spivey v. Safeway Ins. Co.*, 210 Ga. App. 775, 778 (3) (437 SE2d 641) (1993) (noting that the policy's "exclusion of the vehicle owned by the named insured . . . from the definition of 'uninsured motor vehicle' is consistent with the Georgia uninsured motorist statute[,] OCGA § 33-7-11 (b) (1) (D)"). See also Frank E. Jenkins III and Wallace Miller III, Ga. Automobile Ins. Law § 32:1 (2020-2021 ed.) ("The [statutory] term "uninsured motor vehicle" does not include any motor vehicle owned by or furnished for the regular use of the named insured[.] Consistent with this statutory exclusion, the motor vehicle described in the policy cannot serve as the uninsured motor vehicle for the purpose of triggering entitlement to UM benefits

---

[2] Savannah emphasizes that in 2009, the UM Statute was amended to allow for "add on" UM coverage as was provided under the Policy in this case. See *Allstate Fire & Cas. Ins. Co. v. Rothman*, 332 Ga. App. 670, 671-672 (774 SE2d 735) (2015) (discussing evolution of uninsured motorist coverage in Georgia). But even with the advent of such "add on" UM coverage, OCGA § 33-7-11 (b) (1) (D) limits the scope of what constitutes an "uninsured motor vehicle," as discussed above.

7

under such policy. In short, the insured motor vehicle cannot be the uninsured motor vehicle.") (footnotes omitted).

For these combined reasons, Savannah was not entitled to UM benefits under the Policy or the UM Statute. The trial court thus erred in granting partial summary judgment to Savannah and denying Auto-Owners's cross-motion for summary judgment.

*Judgment reversed. Gobeil and Markle, JJ., concur.*